**THIS IS NOT A SOLICITATION OF ACCEPTANCES OF THE CHAPTER 11 PLAN OF LIQUIDATION OF THE OFFICIAL COMMITTEE OF UNSECURED CREDITORS OF ZURICH ASSOCIATES, LTD. IN THIS CHAPTER 11 CASE. ACCEPTANCES MAY NOT BE SOLICITED UNTIL A DISCLOSURE STATEMENT HAS BEEN APPROVED BY THE BANKRUPTCY COURT.  THIS DISCLOSURE STATEMENT IS BEING SUBMITTED FOR APPROVAL, BUT HAS NOT YET BEEN APPROVED BY THE BANKRUPTCY COURT.**

WESTERMAN BALL EDERER MILLER
   & SHARFSTEIN, LLP
Thomas A. Draghi, Esq.
Mickee M. Hennessy, Esq.
1201 RXR Plaza
Uniondale, New York 11556
(516) 622-9200

*Attorneys for the Official Committee of*
*Unsecured Creditors*

UNITED STATES BANKRUPTCY COURT
EASTERN DISTRICT OF NEW YORK
-----------------------------------------------------X
In re:

                             Chapter 11

ZURICH ASSOCIATES, LTD.,

                             Case No.  11-40145-JBR

                Debtor.
-----------------------------------------------------X

**OFFICIAL COMMITTEE OF UNSECURED CREDITORS' DISCLOSURE**

**STATEMENT DATED MAY 26, 2011 IN CONNECTION WITH**

**OFFICIAL COMMITTEE OF UNSECURED CREDITORS' PLAN**

**OF LIQUIDATION DATED MAY 26, 2011**

Uniondale, New York
May 26, 2011

# TABLE OF CONTENTS

Page

I.      INTRODUCTION .................................................................................................7

I (A)   SUMMARY OF CLASSIFICATION AND TREATMENT
        OF CLAIMS AND INTERESTS...................................................................9

II.     SUMMARY OF CLASSIFICATION AND TREATMENT
        UNDER THE PLAN...................................................................................10

III.    VOTING AND CONFIRMATION OF PLAN .......................................................13

        A.    General..................................................................................................13
        B.    Acceptance of Plan ..............................................................................14
        C.    Voting Procedures and Requirements...................................................15
        D.    Confirmation Hearing ..........................................................................15
        E.    Confirmation Requirements..................................................................17
              1.    Feasibility....................................................................................17
              2.    "Best Interests"; Liquidation Analysis.......................................17
              3.    Cramdown.....................................................................................18
                    (a) No Unfair Discrimination.....................................................18
                    (b) Fair and Equitable Test .......................................................19
                    (c) Secured Claims...................................................................19
                    (d) Unsecured Claims  ..............................................................19
                    (e) Interests..............................................................................19

        F.    Alternatives to Confirmation and Consummation of the Plan...............19

IV.     BACKGROUND  ...............................................................................................20

        A.    Events Leading To Chapter 11 Filing...................................................20

V.      THE CHAPTER 11 CASE ...............................................................................20

        A.    Significant Chapter 11 Events ..............................................................21

              1.    Schedules and Statements of Financial Affairs .........................21
              2.    Debtor's Sale Motion..................................................................21
              3.    Objections to the Sale Motion.....................................................21
              4.    Deadline to File Proof of Claim/Objections to Claims..............22
              5.    Stipulation Granting Stay Relief to the Montfleury Creditors....22
              6.    Motion for Authorization to Use Cash Collateral.....................23
              8.    Retention of Professionals .........................................................23
              9.    Other Retentions ........................................................................23

VI.    SUMMARY OF THE PLAN................................................................24

    A.    General Information Concerning Treatment
        Of Claims And Interests..................................................................24

        1.    Administrative Expense Claims and Priority Tax Claims .........24
        2.    Classes of Claims and Interests................................................24

    B.    Classification And Treatment Of Claims And Interests ........................25

        1.    Unclassified Claims ................................................................26
            (a)    Administrative Expense Claims.....................................27
            (b)    Priority Tax Claims  ................................................28
        2.    Classified Claims and Interests................................................29
            (a)    Class 1 – The Real Property Secured Tax Claims .........29
            (b)    Class 2 – Levites Secured Claims .................................30
                 (i) The Levites Real Property........................................30
                (ii) The Levites Plan Contribution ................................31
                (iii) Levites Cash Collateral ..........................................31
                (iv) Full Settlement ......................................................31
            (c)    Class 3 – VNB Secured Claims ....................................32
                 (i) Treatment ................................................................32
                (ii) VNB Plan Contribution..........................................32
                (iii) Full Settlement ......................................................33
            (d)    Class 4 - Priority Claims ..............................................33
            (e)    Class 5 - General Unsecured Claims .............................33
                 (i) Treatment ................................................................33
                (ii) Full Settlement ......................................................33
            (f)    Class 6 – Interests ........................................................34

    C.    Sources Of Cash To Make Plan Distributions ......................................34

    D.    Assumption and Rejection of Executory Contracts
        And Unexpired Leases.........................................................................34

    E.    Bar Date for Rejection Damage Claims................................................34

    F.    Means For Effectuating The Plan .........................................................35

        1.    General................................................................................35
        2.    Sale of the Real Property in Accordance With
            the Auction Sale Procedures ....................................................35
        3.    Transfer Taxes ........................................................................36
        4.    Transfer of Assets ...................................................................36
        5.    Cooperation of the Plan Administrator ....................................37

6.     Funding ................................................................................37
7.     Management of the Debtor .................................................37
8.     Execution of Documents ....................................................38
9.     Filing of Documents ..........................................................38
10.   Transactions on Business Days...........................................38
11.   Implementation ..................................................................38
12.   Initial Funding for the Plan ...............................................39

G.     Post-confirmation Estate ..............................................................39

1.     Creation of Post-confirmation Estate .................................39
2.     Appointment of Plan Administrator....................................39
3.     Vesting of Estate Assets.....................................................39
4.     Preservation and Vesting of Claims, Rights, Demand
       and Causes of Action .........................................................40
5.     Recoveries..........................................................................40

H.     The Plan Administrator ................................................................40

1.     Appointment ......................................................................40
2.     Duties and Powers..............................................................40
3.     Reporting Requirements .....................................................42
4.     Compensation .....................................................................42
5.     Plan Administrator Post-Effective Date..............................42
6.     Post-confirmation Debtor....................................................42
7.     Dissolution of the Committee .............................................42
8.     Prosecution of Objections to Claims; Amendment of Schedules .............44

I.      Provisions Covering Distributions ..............................................44

1.     Timing of Distributions Due Under Plan............................44
2.     Manner of Distributions.....................................................44
3.     Cash Payments ...................................................................44
4.     Disputed Claims Reserve....................................................45
5.     Payment of Statutory Fees..................................................45
6.     No Interest..........................................................................45
7.     Withholding of Taxes .........................................................45
8.     Undeliverable or Unclaimed Distributions ........................46
9.     Post Effective Date Services by the Plan
       Administrator's Professionals ............................................46

J.      Procedures For Resolving Disputed Claims ...............................47

1.     Objections to Claims...........................................................47
2.     Procedure ...........................................................................47

| | | | |
|---|---|---|---|
| | 3. | Payments and Distributions With Respect to Disputed Claims | 47 |
| | 4. | Claims Reserve – Estimation | 47 |
| | 5. | Distributions After Allowance of Disputed Claims | 48 |
| | 6. | Distributions After Disallowance of Disputed Claims | 48 |
| | 7. | Setoffs and Recoupments | 48 |
| K. | | Effect Of Consummation Of The Plan | 48 |
| L. | | Injunction, Release And Exculpation | 49 |
| | 1. | Injunction | 49 |
| | 2. | Release | 49 |
| | 3. | Exculpation | 50 |
| M. | | Conditions Precedent To Confirmation Order, The Effective Date And Consummation Of The Plan | 50 |
| | 1. | Condition Precedent to Entry of the Confirmation Order | 50 |
| | 2. | Conditions Precedent to the Effective Date | 50 |
| | 3. | Conditions Precedent to Consummation | 50 |
| | 4. | The Committee's Right to Waive Conditions Precedent | 51 |
| | 5. | Effect of Failure of Conditions | 51 |
| N. | | Miscellaneous Provisions | 51 |
| | 1. | Bankruptcy Court to Retain Jurisdiction | 51 |
| | 2. | Binding Effect of the Plan | 53 |
| | 3. | Fractional Cents | 53 |
| | 4. | Successors and Assigns | 53 |
| | 5. | Blank Ballots | 53 |
| | 6. | Authorization of Corporate Action | 53 |
| | 7. | Withdrawal of the Plan | 54 |
| | 8. | Captions | 54 |
| | 9. | Method of Notice | 54 |
| | 10. | Amendments and Modifications to Plan | 54 |
| | 11. | Section 1125(e) of the Bankruptcy Code | 56 |
| | 12. | Entire Agreement | 56 |
| | 13. | Post-Confirmation Obligations | 57 |

The Official Committee of Unsecured Creditors (the "Committee") of Zurich Associates Ltd., the debtor and debtor-in-possession in the above-captioned case (the "Debtor"), hereby proposes the following and files this disclosure statement (the "Disclosure Statement") with the United States Bankruptcy Court for the Eastern District of New York (the "Bankruptcy Court"), pursuant to section 1125 of title 11, United States Code (the "Bankruptcy Code"), in connection with Creditors' Committee's proposed Plan of Liquidation dated May 26, 2011 (as it may be amended, altered, modified or supplemented as described herein, the "Plan").[1] A copy of the Plan is annexed to this Disclosure Statement as Exhibit "A".

**THE COMMITTEE BELIEVES THAT THE PLAN PROVIDES THE BEST POSSIBLE RESULT FOR ALL HOLDERS OF CLAIMS AND INTERESTS AND THEREFORE BELIEVES THAT ACCEPTANCE OF THE PLAN IS IN THE BEST INTERESTS OF THE DEBTOR'S CREDITORS AND INTEREST HOLDERS. THE COMMITTEE STRONGLY URGES ALL HOLDERS OF CLAIMS IN IMPAIRED CLASSES RECEIVING BALLOTS THAT ARE ENTITLED TO VOTE ON THE PLAN VOTE TO ACCEPT THE PLAN.**

**THIS DISCLOSURE STATEMENT IS DESIGNED TO SOLICIT YOUR ACCEPTANCE OF THE ATTACHED PLAN AND CONTAINS INFORMATION RELEVANT TO YOUR DECISION. PLEASE READ THIS DISCLOSURE STATEMENT, THE PLAN AND THE OTHER MATERIALS COMPLETELY AND CAREFULLY. THE PLAN SUMMARIES AND STATEMENTS MADE IN THIS DISCLOSURE STATEMENT ARE QUALIFIED IN THEIR ENTIRETY BY REFERENCE TO THE PLAN, OTHER EXHIBITS ANNEXED HERETO AND OTHER DOCUMENTS REFERENCED AS FILED WITH THE BANKRUPTCY COURT BEFORE OR CONCURRENTLY WITH THE FILING OF THIS DISCLOSURE STATEMENT AND THE PLAN. FURTHERMORE, THE FINANCIAL INFORMATION CONTAINED HEREIN HAS NOT BEEN THE SUBJECT OF AN AUDIT. SUBSEQUENT TO THE DATE HEREOF, THERE CAN BE NO ASSURANCE THAT: (A) THE INFORMATION AND REPRESENTATIONS CONTAINED HEREIN WILL CONTINUE TO BE MATERIALLY ACCURATE; OR (B) THE DISCLOSURE STATEMENT CONTAINS ALL MATERIAL INFORMATION.**

**THE CLASSES OF CLAIMS IMPAIRED UNDER THE PLAN AND ENTITLED TO VOTE ON THE PLAN ARE: CLASS 2 (LEVITES SECURED CLAIMS), CLASS 3 (VNB SECURED CLAIMS), CLASS 5 (GENERAL UNSECURED CLAIMS) AND CLASS 6 (INTERESTS). CLASSES 1 (REAL ESTATE TAX SECURED CLAIMS) AND 4 (PRIORITY CLAIMS) ARE UNIMPAIRED AND HOLDERS OF SUCH CLAIMS ARE CONCLUSIVELY PRESUMED TO HAVE ACCEPTED THE PLAN PURSUANT TO SECTION 1126(f) OF THE BANKRUPTCY CODE.**

**HOLDERS OF CLAIMS IN EACH OF CLASSES 2, 3 AND 5, AND INTERESTS IN CLASS 6, ARE ENCOURAGED TO READ AND CAREFULLY CONSIDER THE MATTERS DESCRIBED IN THIS DISCLOSURE STATEMENT PRIOR TO SUBMITTING BALLOTS. IN MAKING A DECISION TO ACCEPT OR REJECT THE PLAN, EACH HOLDER OF A CLAIM OR INTEREST MUST RELY ON ITS OWN EXAMINATION OF**

---

[1] Capitalized terms not other defined herein have the meanings ascribed to them in the Plan.

THE DEBTOR'S SCHEDULES AS DESCRIBED IN THIS DISCLOSURE STATEMENT AND THE TERMS OF THE PLAN, INCLUDING THE MERITS AND RISKS INVOLVED. IN ADDITION, CONFIRMATION AND CONSUMMATION OF THE PLAN ARE SUBJECT TO CONDITIONS PRECEDENT THAT COULD LEAD TO DELAYS IN CONSUMMATION OF THE PLAN. THERE CAN BE NO ASSURANCE THAT EACH OF THESE CONDITIONS WILL BE SATISFIED OR WAIVED (AS PROVIDED IN THE PLAN) OR THAT THE PLAN WILL BE CONSUMMATED EVEN AFTER THE EFFECTIVE DATE. DISTRIBUTIONS UNDER THE PLAN MAY BE SUBJECT TO SUBSTANTIAL DELAYS FOR HOLDERS OF CLAIMS THAT ARE DISPUTED.

EACH CLASS WILL BE DEEMED TO HAVE ACCEPTED THE PLAN IF THE HOLDERS OF CLAIMS IN SUCH CLASS (OTHER THAN ANY HOLDER DESIGNATED UNDER SUBSECTION 1126(e) OF THE BANKRUPTCY CODE) WHO CAST VOTES IN FAVOR OF THE PLAN HOLD AT LEAST TWO-THIRDS IN DOLLAR AMOUNT AND MORE THAN ONE-HALF IN NUMBER OF THE ALLOWED CLAIMS THAT ARE HELD BY HOLDERS OF CLAIMS ACTUALLY VOTING IN EACH SUCH CLASS.

WITH RESPECT TO ANY IMPAIRED CLASS THAT DOES NOT ACCEPT THE PLAN, THE COMMITTEE WILL REQUEST THAT THE BANKRUPTCY COURT CONFIRM THE PLAN UNDER BANKRUPTCY CODE SECTION 1129(b). SECTION 1129(b) PERMITS CONFIRMATION OF THE PLAN DESPITE REJECTION BY ONE OR MORE CLASSES IF THE BANKRUPTCY COURT FINDS THAT THE PLAN "DOES NOT DISCRIMINATE UNFAIRLY" AND IS "FAIR AND EQUITABLE" AS TO THE CLASS OR CLASSES THAT DO NOT ACCEPT THE PLAN. FOR A MORE DETAILED DESCRIPTION OF THE REQUIREMENTS FOR ACCEPTANCE OF THE PLAN AND OF THE CRITERIA FOR CONFIRMATION, *SEE* SECTION III HEREIN, FOR VOTING AND PLAN CONFIRMATION REQUIREMENTS.

NO PARTY IS AUTHORIZED TO GIVE ANY INFORMATION OR MAKE ANY REPRESENTATIONS WITH RESPECT TO THE PLAN OTHER THAN THOSE CONTAINED IN THIS DISCLOSURE STATEMENT. NO REPRESENTATIONS OR INFORMATION CONCERNING THE DEBTOR, THE POST-CONFIRMATION ESTATE OR THE VALUE OF THE DEBTOR'S PROPERTY HAVE BEEN AUTHORIZED OTHER THAN AS SET FORTH HEREIN.

THIS DISCLOSURE STATEMENT HAS BEEN PREPARED IN ACCORDANCE WITH SECTION 1125 OF THE BANKRUPTCY CODE AND NOT IN ACCORDANCE WITH OTHER APPLICABLE NON-BANKRUPTCY LAWS. ENTITIES HOLDING, TRADING IN OR OTHERWISE PURCHASING, SELLING OR TRANSFERRING CLAIMS AGAINST, OR INTERESTS IN THE DEBTOR SHOULD EVALUATE THIS DISCLOSURE STATEMENT ONLY IN LIGHT OF THE PURPOSE FOR WHICH IT WAS PREPARED.

IF THE REQUISITE ACCEPTANCES OF THE PLAN ARE RECEIVED, THE PLAN IS CONFIRMED BY THE BANKRUPTCY COURT AND THE EFFECTIVE DATE OCCURS, ALL HOLDERS OF CLAIMS OR INTERESTS (INCLUDING THOSE WHO DO NOT

SUBMIT BALLOTS ACCEPTING OR REJECTING THE PLAN) WILL BE BOUND BY THE PLAN AND THE TRANSACTIONS CONTEMPLATED THEREBY.

THIS DISCLOSURE STATEMENT HAS NOT BEEN APPROVED OR DISAPPROVED BY THE SECURITIES AND EXCHANGE COMMISSION OR BY ANY STATE SECURITIES COMMISSION OR SIMILAR PUBLIC, GOVERNMENTAL OR REGULATORY AUTHORITY, AND NEITHER SUCH COMMISSION NOR ANY SUCH AUTHORITY HAS PASSED UPON THE ACCURACY OR ADEQUACY OF THE STATEMENTS CONTAINED HEREIN. THE STATEMENTS CONTAINED IN THIS DISCLOSURE STATEMENT ARE MADE AS OF THE DATE HEREOF AND NEITHER THE DELIVERY OF THIS DISCLOSURE STATEMENT NOR ANY DISTRIBUTION OF PROPERTY PURSUANT TO THE PLAN WILL UNDER ANY CIRCUMSTANCES CREATE ANY IMPLICATION THAT THE INFORMATION CONTAINED HEREIN IS CORRECT AS OF ANY TIME SUBSEQUENT TO THE DATE HEREOF OR THAT THERE HAS BEEN NO CHANGE IN THE INFORMATION SET FORTH HEREIN OR IN THE AFFAIRS OF THE DEBTOR SINCE THE DATE HEREOF.

EACH CREDITOR AND INTEREST HOLDER OF THE DEBTOR SHOULD CONSULT WITH THEIR LEGAL, BUSINESS, FINANCIAL AND TAX ADVISORS AS TO ANY SUCH MATTERS CONCERNING THE SOLICITATION OF VOTES TO ACCEPT OR REJECT THE PLAN, THE PLAN AND THE TRANSACTIONS CONTEMPLATED THEREBY.

## I.     INTRODUCTION

On **[May 26, 2011]**, the Committee filed the Plan with the Bankruptcy Court. Concurrently therewith, the Committee filed its Disclosure Statement with the Bankruptcy Court pursuant to section 1125 of the Bankruptcy Code and in connection with the solicitation of Ballots to accept or reject the Plan (the "Solicitation").

On May 26, 2011, the Committee filed a motion (the "Disclosure Statement Motion") for an order approving this Disclosure Statement, establishing a hearing on confirmation if the Plan and granting related relief. At the same time, the Committee also filed a motion for an order shortening notice, requesting that a hearing on the Disclosure Statement Motion be held on June 13, 2011.

**The Bankruptcy Court has scheduled a hearing to consider approval of the Disclosure Statement for June 13, 2011 at 2:00 p.m. (prevailing Eastern Time), before the Honorable Joel B. Rosenthal, United States Bankruptcy Judge, in room 3577 at the United States Bankruptcy Court for the Eastern District of New York, 271 Cadman Plaza East, Brooklyn, New York 11201. The hearing may be adjourned from time to time without further notice other than by announcement in the Bankruptcy Court on the scheduled date of such hearing or any adjourned hearings thereof. Any objections to confirmation of the Plan must be in writing and must be filed with the Clerk of the Bankruptcy Court and served on counsel for the Committee listed below to ensure RECEIPT by them on or before [June 10, 2011]. Counsel on whom objections must be served are:**

WESTERMAN BALL EDERER MILLER
   & SHARFSTEIN, LLP
1201 RXR Plaza
Uniondale, New York 11556
(516) 622-9200
Thomas A. Draghi, Esq.
*Counsel for the Official Committee of Unsecured Creditors*

HARVEY J. CAVAYERO & ASSOCIATES
57 Old Country Road, 2nd Floor
Westbury, NY 11590
Harvey J. Cavayero, Esq.
*Counsel to the Debtor*

MOSES & SINGER
405 Lexington Avenue
New York, NY 10174
Mark N. Parry, Esq.
Declan Butvick, Esq.
*Counsel for Baron Associates, LLC, The Levites Organization, L Girls, LLC, Levites Family, LP, Barry H. Levites n/k/a The Estate of Barry Levites, Janice Levites, Andrea Leon and Harriet Blaiwas*

KRISS & FEUERSTEIN LLP
360 Lexington Avenue
New York, NY 10017
Jerold C. Feuerstein, Esq.
Matthew P. Klein, Esq.
*Counsel to VNB New York Corp.*

Office of the United States Trustee
271 Cadman Plaza East, Suite 4529
Brooklyn, NY 11201
Jacqueline A. Frome, Esq.
Alicia M. Leonhard, Esq.

Attached hereto as Exhibits are copies of the following documents:

    **Exhibit A**:    The Plan;

    **Exhibit B**:    Order of the Bankruptcy Court, dated _____, 2011, among other things, approving this Disclosure Statement, establishing certain procedures with respect to the solicitation of votes to accept or reject the Plan and scheduling a hearing on confirmation of the Plan; and

**Exhibit C**:    The Liquidation Analysis.

**I (A)    SUMMARY OF CLASSIFICATION AND
           TREATMENT OF CLAIMS AND INTERESTS**

**THE SUMMARY OF THE PLAN'S CLASSIFICATION AND TREATMENT OF CLAIMS AND INTERESTS SET FORTH BELOW IS QUALIFIED IN ITS ENTIRETY BY REFERENCE TO THE PROVISIONS SET FORTH IN THE PLAN, THE TERMS OF WHICH CONTROL.**

The estimated aggregate amount of claims in each class, and the estimated amount and nature of consideration to be distributed to each class, is summarized in the table below. In accordance with section 1123(a)(1) of the Bankruptcy Code, Administrative Expense Claims and Priority Tax Claims have not been classified. The Committee's estimates for recoveries by Holders of Allowed Claims are subject to the results of the Auction (described further below) and are based on, among other things, the Committee's current view of the likely amount of Allowed Administrative Expense Claims incurred by the Debtor through confirmation of the Plan and the costs of administering and winding down the Debtor's Estate. There can be no guaranty that Committee's estimates will prove to be accurate.

The estimated amount of Claims shown in the table below are based upon the Debtor's filed Schedules and proofs of claim filed in the Debtor's case. This estimated amount may be revised substantially following further analysis. The amount designated in the table below as "Estimated Percentage Range of Recovery" for each Class is the quotient of the estimated Cash to be distributed to Holders of Allowed Claims in such Class, divided by the estimated aggregate amount of Allowed Claims in such Class. For a discussion of the various factors that could materially affect the amount of Cash to be distributed under the Plan, *see* Section V herein. For purposes of computations of Claim amounts, Administrative Expense Claims and other expenses and for similar computational purposes, the Effective Date is assumed to occur in or about August, 2011. There can be no assurance, however, if or when the Effective Date will actually occur.

## II. SUMMARY OF CLASSIFICATION AND TREATMENT UNDER THE PLAN

| CLASS | TREATMENT | STATUS/ RIGHT TO VOTE | ESTIMATED RANGE AGGREGATE AMOUNT OF ALLOWED CLAIMS OR INTERESTS | ESTIMATED PERCENTAGE RANGE OF RECOVERY (Low-High) [2] |
|---|---|---|---|---|
| Class 1 (Real Estate Tax Secured Claims) | Subject to Section 5.1 of the Plan, on the later of (i) the date of the Closing for such particular Real Property, or (ii) the date on which such Real Property Secured Tax Claim becomes an Allowed Secured Claim, or as soon thereafter as practicable, each Holder of an Allowed Real Property Secured Tax Claim that is attributable to the Real Property that is the subject of such Closing shall receive Cash in an amount sufficient to render such Allowed Secured Claim Unimpaired under section 1124 of the Bankruptcy Code. | **Unimpaired** **Deemed Accepted** | See Plan Exhibit A | 100% |
| Class 2 (Levites Secured Claims) | Provided the Levites Secured Creditor(s) have funded their Plan Contribution, each of the Levites Secured Creditor(s) holding a Lien secured by such Levites Real Property is deemed to have submitted the Opening Credit Bid for such Levites Real Property in the amount set forth on Exhibit "A" to the Plan, and shall be permitted to Credit Bid for such Levites Real Property at the Auction up to the full amount of its/their Allowed Secured Claims attributable to such Levites Real Property as set forth on Exhibit "A". As for each such Levites Real Property, in the event the applicable Levites Secured Creditor(s) with a Lien on such Levites | **Impaired** **Entitled to Vote** | See Plan Exhibit A | 80% - 100% |

---

[2]     The potential recovery for all Classes is dependent on the amount realized from the sale of the Sale Assets following the Auction.

| | | | | |
|---|---|---|---|---|
| | Real Property is determined to be the prevailing bidder, such Levites Secured Creditor(s) shall receive the Deed for such particular Levites Real Property at the Closing, free and clear of all other Liens, claims, encumbrances, taxes and interests of any kind or nature whatsoever, subject to the payment by such Levites Secured Creditor(s) of (aa) all Allowed Real Property Secured Tax Claims attributable to such Levites Real Property at the Closing, and (bb) any amounts necessary to satisfy any amounts due and owing to any Real Estate Broker in connection with such Levites Real Property. | | | |
| | In the an Entity other than the applicable Levites Secured Creditor(s) with a Lien on such Levites Real Property is the prevailing bidder, then such Levites Secured Creditor(s) holding a Lien on such Levites Real Property shall receive all Cash paid by such Entity at the Closing of such Levites Real Property up to the full amount of the Allowed Levites Secured Claim attributable to such Real Property, in excess of the amounts necessary the pay (aa) all Allowed Real Estate Secured Tax Claims attributable to such Levites Real Property at the Closing, and (bb) the amount necessary to satisfy any amounts due and owing to any Real Estate Broker in connection with such Levites Real Property. | | | |
| Class 3 (VNB Secured Claim) | Provided VNB has funded its Plan Contribution, with respect to the VNB Real Property VNB is deemed to have submitted the Opening Credit Bid for the VNB Real Property in the amount set forth on <u>Exhibit "A"</u> to the Plan, and shall be permitted to Credit Bid for the VNB Real Property at the Auction up to the full amount of its Allowed Secured Claim as set forth on Exhibit "A".<br><br>In the event VNB is the prevailing bidder | **Impaired**<br><br>**Entitled to Vote** | See Plan Exhibit A | 67%-100% |

| | | | | |
|---|---|---|---|---|
| | for the VNB Real Property, VNB shall receive the Deed for the VNB Real Property at the Closing, free and clear of all other Liens, claims, encumbrances, taxes and interests of any kind or nature whatsoever, subject to the payment by VNB of (aa) all Allowed Real Property Secured Tax Claims attributable to the VNB Real Property at the Closing, and (bb) any amounts necessary to satisfy any amounts due and owing to any Real Estate Broker in connection with such Real Property.<br><br>In the event that an Entity other than VNB is the prevailing bidder for the VNB Real Property, then VNB shall receive all Cash paid by such Entity at the Closing up to the full amount of the Allowed VNB Secured Claim attributable to the VNB Real Property, in excess of the amounts necessary the pay (aa) all Allowed Real Estate Secured Tax Claims attributable to such Real Property at the Closing, and (bb) the amount necessary to satisfy any amounts due and owing to any Real Estate Broker in connection with such Real Property. | | | |
| Class 4<br><br>(Priority Claims) | On the later of (i) sixty (60) days following the Effective Date, or (ii) the date on which such Priority Claim becomes an Allowed Priority Claim, or as soon thereafter as practicable, each Holder of an Allowed Priority Claim shall receive Cash from the Distribution Fund in an amount sufficient to render such Allowed Priority Claim Unimpaired under section 1124 of the Bankruptcy Code. | **Unimpaired**<br><br>**Deemed to Accept** | $0- app. $200,000[3] | 100% |
| Class 5<br><br>(General | Each Holder of an Allowed Claim in Class 5 shall be entitled to receive its Pro Rata share of the Cash deposited into the | **Impaired**<br><br>**Entitled to** | App. $4.5 million | 0%-100% |

---

[3]     The Committee anticipates that all or substantially all of the Claims filed as "Priority" claims are misclassified Class 5 General Unsecured Claims, but this class has been created in an abundance of caution pending efforts to properly classify claims mistakenly classified as "priority".

| | | | | |
|---|---|---|---|---|
| Unsecured Claims) | Distribution Fund, if any, after payment in full to all Holders of Allowed Administrative Expense Claims, Allowed Priority Tax Claims and Allowed Priority Claims. Subject to the terms hereof, including the establishment of the reserves provided for herein, the Plan Administrator shall make distributions to Holders of Allowed General Unsecured Claims in Class 5 from time to time when the Plan Administrator, in his/her discretion, deems appropriate. | **Vote** | | |
| Class 6 (Allowed Interests) | Class 6 consists of Allowed Interests in the Debtor, including, without limitation, any Holders of options, warrants and other rights to acquire equity interests in the Debtor. Holders of Class 6 Interests shall receive all remaining Cash deposited into the Distribution Fund, if any, after payment in full to all Holders of Allowed Administrative Expense Claims, Allowed Priority Tax Claims, Allowed Priority Claims, and Allowed General Unsecured Claims. If there are no such funds remaining in the Distribution Fund after payment in full of all such Allowed Claims, Holders of Allowed Interests shall not receive or retain any property on account of their Interests other than their Interests in the Post-confirmation Debtor. | **Impaired** **Entitled to Vote** | n/a | n/a |

As described more fully below and in the accompanying Liquidation Analysis annexed hereto at Exhibit C, the actual value of the Sale Assets is not currently known by the Committee at this time, but will be determined at the Auction. However, as set forth in the Liquidation Analysis, recoveries for creditors under the Plan should either equal or exceed the distributions, if any, in a conversion and liquidation under Chapter 7 or a dismissal of the Chapter 11 Case.

## III. <u>VOTING AND CONFIRMATION OF PLAN</u>

A. <u>General</u>.

Confirmation and consummation of a plan of reorganization or liquidation is the principal objective of a Chapter 11 case. A plan of reorganization or liquidation sets forth the treatment of claims against, and interests in a debtor. Confirmation of a plan of reorganization or liquidation by the Bankruptcy Court makes the plan binding upon the debtor, any person or entity

acquiring property under the plan and any creditor of or interest holder in the debtor, whether or not such creditor or interest holder (1) is impaired under or has accepted the plan or (2) receives or retains any property under the plan.

In general, a plan divides the claims against, and interests in a debtor into separate classes and allocates plan distributions among those classes. If the legal, equitable and contractual rights of a class are unaffected by the plan, such class is considered "unimpaired." All unimpaired classes are deemed to have accepted the plan and, therefore, are not entitled to vote under section 1126(f) of the Bankruptcy Code. Here, Classes 1 (Real Estate Tax Secured Claims) and 4 (Priority Claims) are Unimpaired under the Plan and under section 1126(f) of the Bankruptcy Code, the Holders of Allowed Priority Claims are conclusively presumed to accept the Plan. As a result, the acceptances of Holders of such Allowed Claims will not be solicited.

Section 1126(g) of the Bankruptcy Code, on the other hand, provides that all classes of claims and interests that do not receive or retain property under the plan on account of such claims or interests are deemed not to have accepted, or to have rejected the plan and are, likewise, not entitled to vote. All other classes of claims and interests are considered "impaired" and are entitled to vote to accept or reject the plan. Under the Bankruptcy Code, acceptance of the plan is determined by class; therefore, it is not required that each holder of a claim or interest in an impaired class vote in favor of the plan in order for the bankruptcy court to confirm the plan. Generally, each impaired class must vote to accept the plan; however, the bankruptcy court may confirm the plan in certain circumstances without the acceptance of all impaired classes if at least one (1) impaired class votes to accept the plan and certain other statutory tests are satisfied.

A further explanation of the requirements of confirmation if an impaired class rejects the plan is set forth below in this Disclosure Statement. Many of these tests are designed to protect the interests of creditors and interest holders who either do not vote or vote to reject the plan, but who nonetheless would be bound by the plan if it is confirmed by the bankruptcy court.

B.    Acceptance of Plan

As a condition to confirmation, section 1129(a) of the Bankruptcy Code requires that: (a) each impaired class of claims or interests votes to accept the plan; and (b) the plan meets the other requirements of section 1129(a). As explained above, classes that are unimpaired are deemed to have accepted a plan and, therefore, are not entitled to vote and classes that do not receive or retain any property under a plan are deemed to have rejected a plan and are likewise not entitled to vote. Accordingly, acceptances of the Plan are being solicited only from those parties who hold Claims in Impaired Classes that are to or could receive distributions under the Plan. An Impaired Class of Claims will be deemed to have accepted the Plan if Holders of at least two-thirds in dollar amount and more than one-half in number of Claims in such Class that cast timely ballots vote to accept the Plan.

Holders of Claims or Interests who do not timely vote on the Plan are not counted for purposes of determining acceptance or rejection of the Plan by any Impaired Class of Claims or Interests.

C.    Voting Procedures and Requirements

Pursuant to the Bankruptcy Code, only classes of claims against or equity interests in a debtor that are "impaired" under the terms of a plan of liquidation or reorganization, and who receive distributions under such plan, are entitled to vote to accept or reject the plan. Generally, a class is "impaired" under a plan unless such plan leaves unaltered the legal, equitable or contractual rights to which such claim or interest entitles the holder of such claim or interest. Classes of claims and interests that are not impaired are not entitled to vote on the plan and are conclusively presumed to have accepted the plan.

As set forth in the above chart, Holders of Claims in Classes 2, 3 and 5, and Interests in Class 6, are entitled to vote on the Plan.  If any such Class votes to reject the Plan, (a) the Committee will seek to satisfy the requirements for Confirmation of the Plan under the cramdown provisions of section 1129(b) of the Bankruptcy Code and, if required, may amend the Plan to conform to the standards of such section, or (b) the Plan may be modified or withdrawn in its entirety.

Please carefully follow all of the instructions contained on the Ballot or Ballots provided to you with this Disclosure Statement if you are entitled to vote on the Plan. All Ballots must be completed and returned in accordance with the instructions provided.

To be counted, your Ballot or Ballots must be received by the Voting Deadline of [_____, **2011**] by Committee's counsel, Westerman Ball, at 1201 RXR Plaza, Uniondale, New York 11556, Attn.: Thomas A. Draghi, Esq.  It is of the utmost importance to the Committee that you vote promptly to accept the Plan.

If you are entitled to vote and you did not receive a Ballot, received a damaged Ballot or lost your Ballot, please call Committee's counsel, Westerman Ball, Attn.: Thomas A. Draghi, Esq., at (516) 622-9200.

Votes cannot be transmitted orally, by facsimile, or by email.  Accordingly, you are urged to return your signed and completed Ballot, by hand delivery, overnight service or regular U.S. mail, promptly, so that it is received by Committee's counsel on or before the Voting Deadline.

D.    Confirmation Hearing

The Bankruptcy Code requires the Bankruptcy Court, after proper notice to parties in interest, to hold a hearing on whether the Committee, as Plan proponent, has fulfilled the confirmation requirements of section 1129 of the Bankruptcy Code.  The Confirmation Hearing with respect to the Plan has been scheduled for [_____, **2011 at _____]. (Eastern time)** before the Honorable Joel B. Rosenthal, United States Bankruptcy Judge, in room 3577 at the United States Bankruptcy Court for the Eastern District of New York, 271 Cadman Plaza East, Brooklyn, New York 11201.  The Confirmation Hearing may be adjourned from time to time by the Bankruptcy Court without further notice, except for an announcement of the adjourned date made at the Confirmation Hearing. Any objection to confirmation must be made in writing and must specify in detail the name and address of the objecting party, all grounds for the objection and the amount

of the Claim or Interest held by the objecting party. Any such objections must be filed and served upon the persons designated in the notice of the Confirmation Hearing and in the manner and by the deadline described therein.

At the Confirmation Hearing, the Bankruptcy Court will confirm the Plan only if all of the following requirements of section 1129(a) of the Bankruptcy Code are met:

The Plan complies with the applicable provisions of the Bankruptcy Code.

The Committee, as Plan Proponent, has complied with the applicable provisions of the Bankruptcy Code.

The Plan has been proposed in good faith and not by any means forbidden by law.

Any payment made or to be made by the Proponent, the Debtor, or by an entity issuing securities, or acquiring property under the Plan, for services or for costs and expenses in, or in connection with, the Chapter 11 Case or in connection with the Plan and incident to the Chapter 11 Case has been approved by, or is subject to the approval of, the Bankruptcy Court as reasonable.

The Plan discloses the identity and affiliations of any individual proposed to serve, after confirmation of the Plan, as a member or a successor to the Debtor under the Plan, and the appointment to or continuance in such office by such individual must be consistent with the interests of creditors and Interest Holders and with public policy.

With respect to each Impaired Class of Claims or Interests, each Holder of a Claim or Interest in such Class has either accepted the Plan or will receive or retain under the Plan on account of such Claim or Interest property of a value, as of the Effective Date, that is not less than the amount that such holder would receive or retain if the Debtor were liquidated under Chapter 7 of the Bankruptcy Code on the Effective Date.

With respect to each Class of Claims or Interests, such Class has either accepted the Plan or is Unimpaired by the Plan. If this requirement is not met, the Plan may still be confirmed pursuant to section 1129(b) of the Bankruptcy Code.

Except to the extent that the Holder of a particular Claim or Interest has agreed to a different treatment of its Claim, the Plan provides that each Allowed Administrative Expense Claim, Allowed Priority Tax Claim and Allowed Priority Claim shall be paid in full in Cash from the Distribution Fund on the later of (a) ten (10) Business Days following the date of the Closing, or (b) in the event such Claim is not Allowed as of the date of the Closing, the date on which the Bankruptcy Court enters an order allowing such Claim, or (c) such later date as the Plan Administrator and the Holder of such Allowed Claim otherwise agree in writing, or as soon thereafter as is practicable.

If a Class of Claims is Impaired under the Plan, at least one Class of Claims that is Impaired by the Plan has accepted the Plan, determined without including any acceptance of the Plan by any "insider."

Confirmation of the Plan is not likely to be followed by the liquidation, or the need for further financial reorganization, of the Debtor or any successor of the Debtor under the Plan.

All U.S. Trustee Fees payable under section 1930 of title 28 as determined by the Bankruptcy Court at the Confirmation Hearing have been paid or the Plan provides for the payment of all such fees on the Effective Date. The Plan further provides for the payment of all U.S. Trustee Fees accruing from and after the Effective Date.

Upon information and belief, the Debtor does not have any Retiree Benefits (as defined in section 1114 of the Bankruptcy Code).

The Committee believes that the Plan otherwise satisfies, to the extent applicable, all of the statutory requirements of Chapter 11 of the Bankruptcy Code. Certain of these requirements are discussed in more detail below.

E.       Confirmation Requirements

1.       Feasibility

In connection with confirmation of the Plan, section 1129(a)(11) requires that the Bankruptcy Court find that confirmation of the Plan is not likely to be followed by the liquidation or the need for further financial reorganization of the Debtor. This is the so-called "feasibility" test. Here, the Plan contemplates an orderly auction sale and liquidation of the Debtor's assets and distribution of the proceeds thereof to Creditors holding Allowed Claims pursuant to the provisions of the Plan. Accordingly, confirmation of the Plan will not be followed by a liquidation or further reorganization. The Committee, therefore, believes that the Plan complies with the standard of section 1129(a)(11) of the Bankruptcy Code.

2.       "Best Interests"; Liquidation Analysis

In order to confirm the Plan, the Bankruptcy Court also must determine that the Plan is in the best interests of each Holder of a Claim or Interest in any such Impaired Class who has not voted to accept the Plan. Accordingly, if an Impaired Class does not accept the Plan as required under the Bankruptcy Code, the "best interests" test requires that the Bankruptcy Court find that the Plan provides to each member of such Impaired Class a recovery on account of the member's Claim or Interest that has a value, as of the Effective Date, at least equal to the value of the distribution that each such member would receive if the Debtor were liquidated under Chapter 7 of the Bankruptcy Code on such date.

To estimate what members of each Impaired Class of Claims or Interests would receive if the Debtor were liquidated under Chapter 7 of the Bankruptcy Code, the Bankruptcy Court must first determine the aggregate dollar amount that would be available if the Chapter 11 Case was converted to a Chapter 7 case under the Bankruptcy Code and the Debtor's assets were liquidated by a Chapter 7 trustee (the "Liquidation Value"). The Liquidation Value of the Debtor would consist of the net proceeds received from the disposition by a Chapter 7 trustee (as opposed

to the Plan Administrator) of the Debtor's Real Property and other Property, plus any Cash held by the Debtor.

The Liquidation Value available to Holders of Claims or Interests that are not Secured Claims would be reduced by, among other things: (a) the Claims of Secured Creditors to the extent of the value of their collateral; (b) the costs, fees and expenses of the liquidation, as well as other administrative expenses of the Debtor's Chapter 7 Case; (c) unpaid Administrative Expense Claims of the Chapter 11 Case; and (d) Priority Claims and Priority Tax Claims. The Debtor's costs of liquidation in Chapter 7 Case would include the compensation of the trustee, as well as of counsel and of other professionals retained by such trustee, asset disposition expenses, applicable taxes, including Transfer Taxes which only apply in a Chapter 7 and not a Chapter 11 if the Plan is confirmed, litigation costs, Claims arising from the administration of the Debtor during the pendency of the Chapter 7 Case and all unpaid Administrative Expense Claims incurred by the Debtor during the Chapter 11 Case that are allowed in the Chapter 7 Case.

The information contained in Exhibit C hereto provides a summary of the Liquidation Value of the Debtor's interests in property, assuming a Chapter 7 liquidation in which the trustee appointed by the Bankruptcy Court would liquidate the Debtor's properties and interests. In summary, the Committee believes that a Chapter 7 liquidation would increase administrative costs and result in diminution in the value to be realized by Holders of Allowed Claims. Consequently, the Committee believes that the Plan will provide a greater return to Holders of Allowed Claims than would a Chapter 7 liquidation of the Debtor.

3.      Cramdown

In the event that any Impaired Class of Claims or Interests does not accept the Plan, the Bankruptcy Court may nevertheless confirm the Plan if all other requirements under section 1129(a) of the Bankruptcy Code are satisfied, and if, with respect to each Impaired Class which has not accepted the Plan, the Bankruptcy Court determines that the Plan does not "discriminate unfairly" and is "fair and equitable" with respect to such Class. Confirmation under section 1129(b) of the Bankruptcy Code requires that at least one Impaired Class of Claims accepts the Plan, excluding any acceptance of the Plan by an "insider" (as that term is defined in section 101 of the Bankruptcy Code). The Committee intends to seek confirmation of the Plan notwithstanding the nonacceptance of one or more Impaired Classes.

(a)      No Unfair Discrimination. A plan of reorganization does not "discriminate unfairly" with respect to a nonaccepting Class if the value of the cash and/or securities to be distributed to the nonaccepting Class is equal or otherwise fair when compared to the value of distributions to other Classes whose legal rights are the same as those of the nonaccepting Class. The Committee believes that the Plan would not discriminate unfairly against any nonaccepting Class of Claims or Interests.

(b)    <u>Fair and Equitable Test</u>.  The "fair and equitable" test of section 1129(b) of the Bankruptcy Code requires absolute priority in the payment of claims and interests with respect to any nonaccepting Class or Classes.  The "fair and equitable" test established by the Bankruptcy Code is different for secured claims, unsecured claims and interests, and includes the following treatment:

(c)    <u>Secured Claims</u>.  A plan is fair and equitable with respect to a nonaccepting class of secured claims if (aa) the holder of each claim in such class will retain its lien or liens and receive deferred cash payments totaling the allowed amount of its claim, of a value, as of the effective date of the plan, equal to the value of such holder's interest in the collateral, (bb) the holder of each claim in such class will receive the proceeds from the sale of such collateral or (cc) the holder of each claim in such class will realize the indubitable equivalent of its allowed secured claim.

(d)    <u>Unsecured Claims</u>.  A plan is fair and equitable with respect to a nonaccepting class of unsecured claims if (aa) the holder of each claim in such class will receive or retain under the plan property of a value, as of the effective date of the plan, equal to the allowed amount of its claim, or (bb) holders of claims or interests that are junior to the claims of such creditors will not receive or retain any property under the plan on account of such junior claim or interest.

(e)    <u>Interests</u>.  A plan is fair and equitable with respect to a nonaccepting class of interests if the plan provides that (aa) each member of such class receives or retains on account of its interest property of a value, as of the effective date of the plan, equal to the greatest of the allowed amount of any fixed liquidation preference to which such holder is entitled, any fixed redemption price to which such holder is entitled, or the value of such interest, or (bb) holders of interests that are junior to the interests of such class will not receive or retain any property under the plan on account of such junior interests.

Based upon the classifications made and distributions provided for under the Plan, the Committee believes the Plan is fair and equitable as to all Classes.

    F.    <u>Alternatives to Confirmation and Consummation of the Plan</u>

If the Plan is not confirmed, the Committee will seek either conversion of the Debtor's Chapter 11 Case to a liquidation case under Chapter 7 or dismissal.  The Committee believes that under either alternative, distributions to other creditors would necessarily be reduced from those realized under the Plan.

In this case, if the value of the Real Properties exceeds the amount of the Allowed Secured Claims encumbering each Real Property, then the excess will inure to the benefit of creditors without diminishment due to foreclosure expenses or Chapter 7 expenses, including

trustee's commissions. In a Chapter 7 liquidation, if the value of the Real Properties exceeds the amount of the indebtedness due on the Real Properties, then any excess that would become available to creditors would be diminished by Chapter 7 expenses, including trustee's commissions. Similarly, upon dismissal, the value of the Sale Assets would be diminished by foreclosure expenses.

Consequently, the Debtor believes that the Plan will provide a much greater ultimate return to Holders of Allowed Claims than would a Chapter 7 liquidation of the Debtor or a dismissal.

## IV.    BACKGROUND

On information and belief,[4] the Debtor is a New York Corporation that maintains a principal place of business in Queens Village, New York. According to the Debtor's Petition, the Debtor owns 17 parcels of real property (*i.e.,* the Real Properties) located in Brooklyn and on Long Island which are valued by the Debtor as of the Petition Date at $5,450,574.00. *See* Petition at Schedule A. On information and belief, the Debtor generated revenue from the purchase and sale of various residential and certain non-residential real properties, and from obtaining and repaying various secured and unsecured loans over time.

The Debtor is wholly owned by Harry G. Terezakis.

### A.    Events Leading To Chapter 11 Filing

The Debtor purchased substantially all of the Real Properties with primary financing provided by Levites, with the exception of two Real Properties who obtained primary financing from VNB. The Real Properties are identified on Exhibit A to the Plan. Commencing in or around 2009, the Debtor began defaulting on several of its secured and unsecured loans. As a result, several separate litigations were commenced against the Debtor and various guarantors of the Debtor's indebtedness.

On information and belief, the Debtor's bankruptcy filing was precipitated by, among other things, the failure of the Debtor to meet its obligations under its various secured and unsecured loan obligations and in an effort to delay or avoid various litigations brought against the Debtor.

## V.    THE CHAPTER 11 CASE

Since the Filing Date, the Debtor has continued to operate as debtor-in-possession. Within days after the Filing Date, the Debtor brought a motion to sell substantially all of its assets, i.e., the Real Properties, to Levites and VNB, subject to higher better offers. The Committee objected to the Sale Motion, among other reasons, because of the lack of evidence reflecting appropriate valuation of the Properties and/or proper marketing of the Properties. After negotiation, the Committee, Levites, VNB and the Debtor have promulgated a consensual process for the sale of

---

[4]       Except as actually known by the Committee, the Background concerning the Debtor is derived from the Debtor's Voluntary Petition, Schedules, the Affidavit of Harry Terezakis Pursuant to Local Rule 1007-4 [Docket No. 7] and pleadings publicly filed by the Debtor with the Bankruptcy Court.

the Debtor's Real Properties and for the wind-down liquidation of the Debtor. In addition, the Debtor has consented to expiration of its exclusive period within which to file a plan of reorganization and solicit acceptances thereto.

A.    Significant Chapter 11 Events

1.    Schedules and Statements of Financial Affairs. Section 521 of the Bankruptcy Code and Bankruptcy Rule 1007 require a debtor to prepare and file schedules and statements of financial affairs in connection with the commencement of a Chapter 11 Case. The Debtor filed its Voluntary Petition, Schedules of Assets and Liabilities and its Statement of Financial Affairs on January 10, 2011 [Docket No. 1]. Much of the financial and claims-related information contained in this Disclosure Statement is derived from the above referenced documents filed by the Debtor, and all parties are encouraged to review these documents.

2.    Debtor's Sale Motion. Within a couple days of the Petition Date, on January 14, 2011, the Debtor filed a motion seeking to sell the Properties by permitting a credit bid by the secured lender holding a security interest in each such Property (the "Sale Motion").

3.    Objections to the Sale Motion.

On February 1, 2011, VNB New York Corp ("VNB") filed a limited opposition to the Sale Motion, to the extent the Sale Motion failed to provide that VNB could credit bid on a sale of the Property encumbered by its mortgage [Docket No. 28].

On February 4, 2011, certain creditors of the Debtor, *i.e.,* Gail and Paul Horner, also objected to the Sale Motion. Among other reasons, these creditors argued that the sale was premature given that the case had just been filed, and that the bidding procedures were lacking, in terms of evidence of the value of the Properties and sufficient time between the proposed auction sale and hearing to approve to provide a meaningful opportunity for interested parties to object. [Docket No. 33].

On February 8, 2011, certain other creditors, *i.e.,* James Follender, Antanino Puglia and John Burczyk, objected to the Sale Motion as well, arguing, among other things, that the proposed sale of substantially all of the assets should be done in the context of a Plan with creditors entitled to vote. [Docket No. 35].

On February 8, 2011, The Office of the United States Trustee opposed the Sale Motion as well, on grounds that there was no stated reason for the urgency of sale, there was insufficient notice period proposed by the Debtor as required by applicable Bankruptcy Law and Rules, and to the extent the

proposed sale relied on the assistance of real estate professionals that had not as of that date been retained by the Debtor. [Docket No. 36].

On February 8, 2011, creditors Garcia Montfleury, Joseph Emmanuel, Sheila Audige, Vladimir Monel, Jaurel LaTouche (collectively, the "Montfleury Creditors") opposed the Sale Motion. In addition to the other grounds identified by other objectants, these creditors argued that the relief requested was improperly violative of a pending pre-petition injunction in a pending state court action enjoining the Debtor from transferring the Properties. [Docket No. 37].

On February 8, 2011, as supplemented on March 4, 2011, the Committee objected to the Sale Motion, raising the foregoing issues, along with the Committee's concerns regarding the lack of time and ability to review the bona fides of the purported secured liens and other concerns. [Docket No. 38, 65].

On March 1, 2011, The City of New York Department of Financed opposed, identifying tax arrears on each of the Properties and asserting that no sale could go forward without providing payment of these taxes in full at any Closing.

At a hearing on the Sale Motion, held on March 8, 2011, various parties, including the Debtor, the Committee and Secured Creditors agreed to resolve the objections to the Sale Motion by engaging instead in a consensual process for the sale of the Properties to be conducted pursuant to a Plan, to be voted on by creditors. The Debtor agreed to waive its exclusive periods to permit the Committee to promulgate and file this Plan, and to solicit acceptances thereto.

4.      Deadline to File Proofs of Claim/Objections to Claims.

On March 21, 2011, the Debtor filed an application to set the last day to file proofs of claims. [Docket No. 73]. By Order dated March 23, 2011, the Court established May 9, 2011 as the deadline within which to file proofs of claim (with government proofs of claim due by July 11, 2011). [Docket No. 74].

5.      Stipulation Granting Stay Relief to the Montfleury Creditors.

On February 28, 2011, the Montfleury Creditors filed a motion for relief from the automatic stay provisions of the Bankruptcy Code, to the extent necessary, to permit the Montfleury Creditors to prosecute certain non-debtor

defendants in a pending state court action and to seek discovery from the Debtor in connection with that lawsuit. [Docket No. 62].

On April 8, 2011, the Bankruptcy Court entered a Stipulation and Order agreed to by and among the Committee, the Montfleury Creditors and the Debtor for relief from stay for these limited purposes, provided that the Bankruptcy Court retains jurisdiction with respect to any disputes involving discovery by the Debtor. [Docket No. 78].

6. <u>Motion for Authorization to Use Cash Collateral</u>. On May 5, 2011, counsel for the Levites Secured Creditors filed a Motion for an Order Approving a Proposed Stipulation Authorizing the Debtor to Use Cash Collateral. [Docket No. 80]. At the hearing held on May 23, the Bankruptcy Court approved and signed the Stipulation. [Docket No. 89].

7. <u>Retention of Professionals</u>.

On January 13, 2011, as amended on February 9, 2011 and again on February 15, 2011, the Debtor filed its Application to Employ Harvey J Cavayero & Associates as Debtor's Counsel. [Docket No. 10, 42, 52]. The Committee filed a limited objection to the Application [Docket No. 47]. The Office of the United States Trustee also objected to the Application on February 22, 2011 [Docket No. 54].

After a hearing on the Application, on March 1, 2011, the Court entered an order authorizing the retention of the Debtor's attorney. [Docket No. 64].

8. <u>Other Retentions</u>.

On March 8, 2011, the Court entered an order granting the Committee's Application to Employ Westerman, Ball, Ederer, Miller & Sharfstein, LLP as counsel to the Committee, *nunc pro tunc* as of February 3, 2011 [Docket No. 69].

On March 8, 2011, the Court entered an order granting the Committee's Application to Employ CBIZ Accounting, Tax & Advisory of New York, LLC and CBIZ, Inc. as Financial Advisors to the Committee. [Docket No. 70].

## VI.   **SUMMARY OF THE PLAN**

The following is an overview of certain material provisions of the Plan. The following summaries of the material provisions of the Plan do not purport to be complete and are qualified in their entirety by reference to all the provisions of the Plan, all exhibits, all documents described therein, and the definitions therein of certain terms used below.

A. General Information Concerning Treatment Of Claims And Interests

1. Administrative Expense Claims and Priority Tax Claims

Pursuant to the Plan, Holders of Allowed Administrative Expense Claims and Allowed Priority Tax Claims (set forth in Articles II and III of the Plan) have not been classified and are excluded from classification in accordance with section 1123(a)(1) of the Bankruptcy Code. As more fully discussed in this Section below, the Holders of Allowed Claims in each of these Classes will receive payment in full in Cash from the Distribution Fund.

2. Classes of Claims and Interests

Classes 2, 3, 5 and 6 are Impaired and entitled to vote on the Plan. The Committee intends to solicit acceptances of the Plan from Holders of such Claims. Under section 1126(f) of the Bankruptcy Code, Holders of Real Estate Tax Claims (Class 1) and Priority Claims (Class 4) are Unimpaired under the Plan, are deemed to have accepted the Plan, and the acceptance of such Holders will not be solicited.

The Committee intends to seek confirmation of the Plan and to take all steps necessary to cause the Effective Date to occur as soon as practicable. There can be no assurance, however, as to when the Effective Date will actually occur. Procedures for the distribution of Cash pursuant to the Plan, including matters that are expected to affect the timing of the receipt of distributions by Holders of Allowed Claims in certain Classes and that could affect the amount of distributions ultimately received by such Holders, are described more fully in Section F below, entitled "PROVISIONS COVERING DISTRIBUTIONS".

The Committee believes that the Plan provides the best possible treatment for all Classes of Claims and Interests. The Bankruptcy Court must find, however, that a number of statutory tests are met before it may confirm the Plan. Many of these tests are designed to protect the interests of Holders of Claims or Interests who do not vote to accept the Plan, but who will be bound by the provisions of the Plan if it is confirmed by the Bankruptcy Court. The "cramdown" provisions of section 1129(b) of the Bankruptcy Code, for example, permit confirmation of a chapter 11 plan in certain circumstances even if the plan is not accepted by all impaired classes of claims and interests. *See* Section II herein, entitled "VOTING AND CONFIRMATION OF THE PLAN."

If the Plan is deemed not to be accepted by one of the Classes entitled to vote, then the Committee, as Plan proponent, will request that the Bankruptcy Court confirm the Plan under section 1129(b) of the Bankruptcy Code. Section 1129(b) permits confirmation of the Plan despite rejection by one or more impaired classes if the Bankruptcy Court finds that the Plan "does not discriminate unfairly" and is "fair and equitable" as to the rejecting class or classes. The Committee will request that the Bankruptcy Court find that the Plan is fair and equitable and does not discriminate unfairly as to Class 6 and any other Class that fails to accept the Plan.

As noted above, the Bankruptcy Court may confirm the Plan under section 1129(b) of the Code if the Plan is fair and equitable as to any rejecting classes. A plan is fair and equitable

to the dissenting class or classes if the holder of any claim or interest junior to the claims or interests of such class will not receive or retain under the plan on account of such junior claim or interest any property, with limited exception not applicable herein.

For a more detailed description of the requirements for acceptance of the Plan and of the criteria for confirmation notwithstanding rejection by certain classes, *see* Section II.E. herein, entitled "CONFIRMATION REQUIREMENTS."

B.    Classification And Treatment Of Claims And Interests

Section 101(5) of the Bankruptcy code defines a Claim as: (1) a "right to payment, whether or not such right is reduced to judgment, liquidated, unliquidated, fixed, contingent, matured, unmatured, disputed, legal, equitable, secured or unsecured"; or (2) a "right to an equitable remedy for breach or performance if such breach gives rise to a right to payment, whether or not such right to an equitable remedy is reduced to judgment, fixed, contingent, matured, unmatured, disputed, undisputed, secured or unsecured." 11 U.S.C. §101(5).

Section 1123 of the Bankruptcy Code requires that, for purposes of treatment and voting, a Chapter 11 plan divide the different claims against, and interests in a debtor into separate classes based upon their legal nature. In accordance with section 1123 of the Bankruptcy Code, claims of a substantially similar legal nature are usually classified together, as are shareholder interests which give rise to the same legal rights; the "claims" and "interests" themselves, rather than their holders, are classified.

Under a Chapter 11 plan, the separate classes of claims and interests must be designated either as "impaired" or "unimpaired" by the plan. If a class of claims is "impaired," the Bankruptcy Code affords certain rights to the holders of such claims, such as the right to vote on the plan (unless the plan provides for no distribution to the holders, in which case, the holder is deemed to reject the plan), and the right to receive under the Chapter 11 plan property of a value that is not less than the value the holder would receive if the debtor were liquidated under Chapter 7.

Under section 1124 of the Bankruptcy Code, a class of claims or interests is "impaired" unless the plan (1) does not alter the legal, equitable, or contractual rights of the holders or (2) irrespective of the holders' acceleration rights, the plan cures all defaults (other than those arising from the debtor's insolvency, the commencement of the case, or nonperformance of a nonmonetary obligation), reinstates the maturity of the claims or interests in the class, compensates the holders for actual damages incurred as a result of their reasonable reliance upon any acceleration rights, and does not otherwise alter their legal, equitable, or contractual rights. Typically, this means the holder of an unimpaired claim will receive on the later of the effective date or the date on which amounts owing are due and payable, payment in full, in cash, with post-petition interest to the extent appropriate and provided under the governing agreement (or if there is no agreement, under applicable nonbankruptcy law), and the remainder of the debtor's obligations, if any, will be performed as they come due in accordance with their terms. Thus, other than its right to accelerate the debtor's obligations, the holder of an unimpaired claim will be placed in the position it would have been in had the Debtor's case not been commenced.

As discussed above, section 1123 of the Bankruptcy Code provides that a plan of reorganization or liquidation shall classify the claims of a debtor's creditors and interest holders. In compliance therewith, the Plan divides Claims and Interests into six (6) Classes and sets forth the treatment for each Class. In accordance with section 1123(a), Administrative Expense Claims and Priority Tax Claims have not been classified.

Section 1122 of the Bankruptcy Code further requires that each class of claims and interests contain only claims or interests that are "substantially similar" to each other. The Committee believes that it has classified all Claims and Interests in compliance with the requirements of sections 1122 and 1123. However, it is possible that a Holder of a Claim or Interest may challenge such classification and that the Bankruptcy Court may find that a different classification is required for the Plan to be confirmed. In such event, the Committee intends, to the extent permitted by the Bankruptcy Court, to modify the classifications in the Plan as required and use the acceptances received in this solicitation for the purpose of obtaining the approval of a Class or Classes of which the accepting holder is ultimately deemed to be a member. Any such reclassification could adversely affect the Class of which such holder was initially a member, or any other Class under the Plan, by changing the composition of such Class and the vote required of that Class for approval of the Plan. Furthermore, a reclassification of Claims or Interests could necessitate a re-solicitation of votes.

The following describes the classification of Claims and Interests under the Plan and the treatment that Holders of Allowed Claims and Allowed Interests are to receive if the Plan is confirmed and becomes effective. A Claim or Interest is classified in a particular Class only to the extent that the Claim or Interest fits within the description of that Class and is classified in a different Class to the extent that any remainder of the Claim or Interest fits within the description of such different Class.

1. <u>Unclassified Claims</u>

The Bankruptcy Code does not require classification of certain priority claims against a debtor. In the Chapter 11 Case, these unclassified claims include Administrative Expense Claims and Priority Tax Claims. All distributions referred to below that are scheduled for the Closing Date will be made on the later of (a) ten (10) Business Days following the date of the Closing, or (b) in the event such Claim are not Allowed as of the date of the Closing, the date on which the Bankruptcy Court enters an order allowing such Claims, or (c) such later date as the Plan Administrator and the Holder of such Claims otherwise agree in writing, or as soon thereafter as is practicable.

(a) <u>Administrative Expense Claims</u>. Administrative Expense Claims are the actual and necessary costs and expenses incurred in connection with the Chapter 11 Case that are allowed under section 503(b) of the Bankruptcy Code. These expenses typically may include post-petition amounts owed to vendors providing goods and services to a debtor during the Chapter 11 case, and other obligations incurred after the filing date, to the extent Allowed by the Bankruptcy Court.

Other Administrative Expense Claims include the actual, reasonable fees and expenses incurred during the Chapter 11 Case of the Debtor's Professionals, to the extent Allowed by the Bankruptcy Court. As indicated above, the Committee believes the Administrative Expense Claims of Professionals include the fees and expenses of (i) Debtor's Counsel, Harvey Cavayero, Esq., for services rendered to the Debtor during the Chapter 11 Case; (ii) Westerman Ball Ederer Miller & Sharfstein, LLP, for services rendered as counsel to the Committee during the Chapter 11 Case from and after February 3, 2011; and (iii) the fees and expenses of CBIZ as Financial Advisor to the Committee.

At this time, the total amount of potential Allowed Administrative Expense of Debtor's Professionals is unknown, however, Debtor's counsel has agreed to a maximum recovery of post-petition fees and expenses aggregating not more than $15,000.00. Committee counsel's accrued fees and expenses aggregate approximately $75,000.00 as of March 31, 2011 and the fees and expenses of CBIZ as Financial Advisor aggregate approximately $20,000.00.

The Debtor anticipates that any other Administrative Expense Claims will continue to be paid as they come due during the Chapter 11 Case. Administrative Expense Claims, for the most part, comprise the unpaid Allowed Professional Fees incurred by the Debtor's Professionals in the Chapter 11 Case.

All payments to Professionals for compensation and reimbursement of expenses will be made in accordance with the procedures established by the Bankruptcy Code and the Bankruptcy Rules relating to the payment of interim and final compensation and expenses. The Bankruptcy Court will review and determine all such requests. Requests for such compensation must be approved by the Bankruptcy Court after notice and a hearing wherein the Debtor, the Committee, the Plan Administrator and other parties-in-interest may participate, and if appropriate, object to the allowance thereof.

Each Allowed Administrative Expense Claim shall be paid in full in Cash from the Distribution Fund on the later of (a) ten (10) Business Days following the date of the Closing, or (b) in the event such Administrative Expense Claim is not Allowed as of the date of the Closing, the date on which the Bankruptcy Court enters an order allowing such Administrative Expense Claim, or (c) such later date as the Plan Administrator and the Holder of such Allowed Administrative Expense Claim otherwise agree in writing, or as soon thereafter as is practicable; *provided, however*, that Allowed Administrative Expense Claims incurred by the Plan Administrator or Professionals retained by the Plan Administrator on or after the Effective Date shall not be subject to application and may be paid by the Plan Administrator in the ordinary course of business and without further Bankruptcy Court approval.

Any Claimant seeking allowance of an Administrative Expense Claim for an Administrative Expense Claim the amount of which is not agreed to in writing by the Plan Administrator and the Claimant, or otherwise Allowed by a Final Order, must file proof of its Administrative Expense Claim with the Bankruptcy Court and serve a copy thereof upon (a) Committee counsel, Westerman Ball, 1201 RXR Plaza, Uniondale, New York 11556, Attn.: Thomas A. Draghi, Esq.; (b) the Plan Administrator, Salvatore LaMonica, Esq., LaMonica, Herbst & Maniscalco, LLP, 3305 Jerusalem Avenue, Wantagh, New York 11793; and (iii) the United

States Trustee for the Eastern District of New York, 271 Cadman Plaza East, Suite 4529, Brooklyn, New York 11201, Attn.: Jacqueline A. Frome, Esq., no later than fifteen (15) days following the Confirmation Date; *provided, however*, that with respect to any such timely filed Administrative Expense Claim, such Claim shall be Allowed only if (x) the amount is agreed to in writing by the Plan Administrator and such Claimant, (y) no objection to the allowance thereof is interposed by the Debtor or other party-in-interest or, after the Effective Date, the Plan Administrator on or before one hundred twenty (120) days after the Effective Date, or such other date as may be established by the Bankruptcy Court, or (z) if an objection is interposed, (aa) such Administrative Expense Claim has been allowed (or to the extent it has been allowed) by a Final Order, or (bb) such objection is withdrawn.  With respect to Claimants seeking allowance of Professional Fees as Administrative Expense Claims, all applications for final compensation of Professionals for services rendered and for reimbursement of expenses incurred for any period prior to the Confirmation Date must be filed no later than thirty (30) days following the Effective Date, and shall be Allowed following entry by the Bankruptcy Court of any order or orders allowing same (or to the extent it has been previously allowed).

Each Administrative Expense Claim Claimant who seeks allowance of an Administrative Expense Claim (a) that is not either agreed to in writing by the Plan Administrator and the Claimant, or otherwise allowed by a Final Order, and that fails to timely and duly file a proof of its Administrative Expense Claim, or (b) for Professional Fees that fails to timely and duly institute a request for a hearing thereon, as provided for in the Plan, shall have its Claim expunged and shall thereafter be forever barred from asserting any such Administrative Expense Claim. Except as otherwise specified in the Plan or a Final Order of the Bankruptcy Court, the Allowed Amount of an Administrative Expense Claim shall not include interest on such Claim from and after the Filing Date.

By agreement stated on the record in Bankruptcy Court on March 8, 2011, the Allowed Amount of any Administrative Expense Claim that may be awarded Debtor's Counsel shall not exceed the sum of any pre-Filing Date retainer received by Debtor's Counsel that was unapplied as of the Filing Date, plus the sum of $15,000 from the Distribution Fund.

(b) <u>Priority Tax Claims</u>.  Each Holder of an Allowed Priority Tax Claim shall, in the discretion of the Plan Administrator, receive the following on account of such Allowed Claim: (a) payment in full in Cash on the later of (i) twenty (20) Business Days following the Effective Date, or (ii) in the event such Priority Tax Claim is not Allowed as of the date of the Effective Date, the date on which the Bankruptcy Court enters an order allowing such Priority Tax Claim, or as soon thereafter as is practicable; (b) Cash payments made in equal annual installments beginning on or before the first anniversary following the Filing Date with the final installment being payable no later than the fifth anniversary of the Filing Date, together with interest on the unpaid balance of such Allowed Priority Tax Claim from the Effective Date calculated either at the rate set forth in section 6621 of the Internal Revenue Code, or as otherwise agreed to by the parties; or (c) such other treatment agreed to by the Holder of such Allowed Priority Tax Claim and the Plan Administrator, or as otherwise allowed pursuant to the Bankruptcy Code or other applicable law.

2. <u>Classified Claims and Interests</u>

(a)    <u>Class 1- The Real Property Secured Tax Claims</u>. Class 1 consists of Allowed Real Property Secured Tax Claims. Each Allowed Real Property Secured Tax Claim is secured by a Lien on a particular Real Property for unpaid Real Property Taxes attributable to such Real Property. On the later of (i) the date of the Closing for such particular Real Property, or (ii) the date on which such Real Property Secured Tax Claim becomes an Allowed Secured Claim, or as soon thereafter as practicable, each Holder of an Allowed Real Property Secured Tax Claim that is attributable to the Real Property that is the subject of such Closing shall receive Cash in an amount sufficient to render such Allowed Secured Claim Unimpaired under section 1124 of the Bankruptcy Code. Further, pending the Closing for such particular Real Property, the Holder of the applicable Allowed Real Property Secured Tax Claim shall retain its Lien on such Real Property.

With respect to each particular Real Property, in the event such Real Property is sold pursuant to a Credit Bid made in accordance with the terms of the Plan and the Auction Sale Procedures, to either (i) the applicable Levites Secured Creditor(s) holding a Lien secured by such Real Property if it involves a Levites Real Property, or (ii) VNB if it involves the VNB Real Property, the Secured Creditor making such Credit Bid shall pay all Allowed Real Property Secured Tax Claims attributable to such Real Property at the Closing. In the event such particular Real Property is sold to an Entity other than a Secured Creditor making a Credit Bid in accordance with the terms of the Plan and the Auction Sale Procedures, all Allowed Real Property Secured Tax Claims attributable to such Real Property shall be paid in full from the first proceeds of sale at such Closing.

Notwithstanding the foregoing and anything herein to the contrary, with respect to each particular Real Property, from and after the Effective Date, (a) only the Secured Creditor with a lien on such Real Property subject to a Real Property Secured Tax Claim (by and through his/her retained professionals) shall have the authority to file or litigate to judgment objections to the Real Property Secured Tax Claims attributable to such Real Property, and (b) only the Secured Creditor with a lien on such Real Property subject to a Real Property Secured Tax Claim shall have the right to settle, compromise, and withdraw objections to Real Property Secured Tax Claims attributable to such Real Property. Subject to an order of the Bankruptcy Court providing for a later deadline, the Secured Creditor with a lien on such Real Property subject to a Real Property Secured Tax Claim may object to the particular Real Property Secured Tax Claim attributable to such Real Property by filing an objection with the Bankruptcy Court and serving such objection upon the Holder of such Real Property Secured Tax Claim not later than the date immediately preceding the date of the Closing for such particular Real Property, or such later date fixed by the Bankruptcy Court. If an objection is timely filed, unless agreed to by written stipulation of the Secured Creditor with a lien on such Real Property subject to a Real Property Secured Tax Claim, or until an objection thereto by the Secured Creditor with a lien on such Real Property subject to a Real Property Secured Tax Claim is withdrawn, the Secured Creditor with a lien on such Real Property subject to a Real Property Secured Tax Claim (by and through his/her retained professionals) may litigate the merits of each Disputed Real Property Secured Tax Claim attributable to such Real Property until a Final Order is entered with respect to such Real Property Secured Tax Claim; *provided, however*, that the Secured Creditor with a lien on such Real Property subject to a Real Property Secured Tax Claim may compromise and settle any objection to any Real Property Secured Tax Claim attributable to such Real Property. Any settlement between the Secured

Creditor with a lien on such Real Property subject to a Real Property Secured Tax Claim and the Holder of a Real Property Secured Tax Claim attributable to such Real Property shall not require or be subject to Bankruptcy Court approval. No payments or Distributions shall be made in respect of any such Real Property Secured Tax Claim that is the subject of a timely filed objection in accordance with the terms hereof until such Real Property Secured Tax Claim becomes an Allowed Real Property Secured Tax Claim.

With respect to each particular Real Property, in the event there is a timely filed objection to a particular Real Property Secured Tax Claim attributable to such Real Property, at the Closing for the sale of such Real Property, funds sufficient to pay the Maximum Amount of such Disputed Real Property Secured Tax Claim attributable to such Real Property shall be delivered to the Plan Administrator by either (a) the Secured Creditor acquiring such Real Property pursuant to a Credit Bid at such Closing, or (b) in the event such particular Real Property is sold to an Entity other than a Secured Creditor making a Credit Bid, from the first proceeds of sale at such Closing. Any such funds delivered to the Plan Administrator shall be maintained by the Plan Administrator in a segregated, interest bearing account and administered as if it were deposited into the Disputed Claims Reserve in accordance with Article 10 of the Plan.

Class 1 is Unimpaired Class under the Plan.

(a) <u>Class 2 – Levites Secured Claims.</u> Class 2 consists of the Levites Secured Claims.

(i) <u>The Levites Real Property</u>. <u>Treatment</u>. Class 2 consists of the Allowed Levites Secured Claims. (i) <u>The Levites Real Property</u>. With respect to each particular Levites Real Property, the applicable Levites Secured Creditor(s) holding a Lien secured by such Levites Real Property is deemed to have submitted the Opening Credit Bid for such Levites Real Property in the amount set forth on <u>Exhibit "A"</u> hereto, and shall be permitted to Credit Bid for such Levites Real Property at the Auction up to the full amount of its/their Allowed Secured Claims attributable to such Levites Real Property as set forth on <u>Exhibit "A"</u>. As for each such Levites Real Property, in the event: (aa) the applicable Levites Secured Creditor(s) with a Lien on such Levites Real Property is determined at the Auction to be the Successful Bidder based on its/their Allowed Secured Claim attributable to such Levites Real Property, or (bb) such Levites Secured Creditor(s) are determined at the Auction to be the Back-up Bidder and the Successful Bidder defaults and fails to close on the sale of the particular Levites Real Property and such Levites Secured Creditor(s) are deemed to be the prevailing bidder based on its/their highest preceding Credit Bid, or (cc) the Back-up Bidder shall fail to timely close the sale of such Levites Real Property and shall default in its obligations to do so in accordance with the provisions of Auction Sale Procedures, or (dd) there shall be no Back-up Bidder selected by the Plan Administrator, after consultation with the Levites Secured Creditors, and the Successful Bidder shall fail to timely close the sale of such Levites Real Property and shall default in its obligations to do so in accordance with the provisions the Auction Sale Procedures and such Levites Secured Creditor(s) are deemed to be the prevailing bidder based on its/their highest preceding Credit Bid, pursuant to the terms of the Plan and the Confirmation Order, such Levites Secured Creditor(s) shall receive the Deed for such particular Levites Real Property at the Closing, free and clear of all other Liens, claims, encumbrances, taxes and interests of any kind or nature whatsoever, subject to the payment by such Levites Secured Creditor(s) of all Allowed Real Property Secured Tax Claims attributable to such Levites Real Property at the Closing.

In the event that the Successful Bidder or Back-up Bidder, if applicable, acquiring such particular Levites Real Property is an Entity other than the applicable Levites Secured Creditor(s) with a Lien on such Levites Real Property, then such Levites Secured Creditor(s) holding a Lien on such Levites Real Property shall receive all Cash paid by such Entity at the Closing of such Levites Real Property up to the full amount of the Allowed Levites Secured Claim attributable to such Real Property, in excess of the amounts necessary to pay (aa) all Allowed Real Estate Secured Tax Claims attributable to such Levites Real Property at the Closing, and (bb) the amount necessary to satisfy any amounts due and owing to any Real Property Broker in connection with such Levites Real Property.

(ii)     The Levites Plan Contribution.  The Levites Secured Creditors will deposit the Levites Plan Contribution in the sum of One Hundred Forty Thousand ($140,000.00) Dollars with the Levites Escrow Agent, by wire transfer, cashier's check or certified check, so that such funds are actually received by the Levites Escrow Agent by no later than two (2) Business Days following the Confirmation Date.  On or before the date of the Auction, the Levites Escrow Agent will deliver the Levites Plan Contribution to the Plan Administrator, by wire transfer, cashier's check or certified check, so that such funds are actually received by the Plan Administrator on such date, which funds will be deposited by the Plan Administrator into the Distribution Fund for disbursement in accordance with the terms of the Plan.

**In consideration for the Levites Plan Contribution and the waiver of any right of recovery on account of any Allowed Administrative Expense Claims and any Allowed General Unsecured Claims the Levites Secured Creditors may have in the Chapter 11 Case, including any unsecured "deficiency" claims the Levites Secured Creditors may hold against the Debtor, on the Effective Date, except as otherwise provided for herein, the Debtor shall be deemed to have released the Levites Secured Creditors, and each of their members, officers, directors, employees, and attorneys, and any of the Real Property or Cash Collateral transferred to the Levites Secured Creditors under the Plan or the Levites Cash Collateral Stipulation, from any debt, charge, Causes of Action, liability, encumbrance, Lien, security interest, Claim, Interest, or other cause of action of any kind, nature or description (including, but not limited to, any claim of successor liability).**

(iii)     The Levites Cash Collateral.  On the Effective Date, or as soon thereafter as practicable, the Debtor or Plan Administrator shall deliver and turn over to the Levites Secured Creditors all of the Levites Cash Collateral accrued through the Confirmation Date and not previously delivered to the Levites Secured Creditors pursuant to the Levites Cash Collateral Stipulation.

(iv)     Full Settlement.  The treatment and consideration to be received by the Levites Secured Creditors on account of their Allowed Claims in Class 2 shall be in full settlement and final satisfaction of their Claims against the Debtor; *provided, however*, the Levites Secured Creditors do not waive and specifically preserve and retain the right to assert any deficiency claims against any third-party obligors.

Class 2 is Impaired under the Plan.

(b)      Class 3:  VNB Secured Claim

(i)      Treatment.  Class 3 consists of the VNB Secured Claim.  (i) The VNB Real Property.  With respect to the VNB Real Property, VNB is deemed to have submitted the Opening Credit Bid for the VNB Real Property in the amount set forth on Exhibit "A" to the Plan, and shall be permitted to Credit Bid for the VNB Real Property at the Auction up to the full amount of its Allowed Secured Claim as set forth on Exhibit "A".  In the event: (aa) VNB is determined at the Auction to be the Successful Bidder based on its Allowed Secured Claim, or (bb) VNB is determined at the Auction to be the Back-up Bidder and the Successful Bidder defaults and fails to close on the sale of the VNB Real Property and VNB is deemed to be the prevailing bidder based on its highest preceding Credit Bid, or (cc) the Back-up Bidder shall fail to timely close the sale of the VNB Real Property and shall default in its obligations to do so in accordance with the provisions of Auction Sale Procedures, or (dd) there shall be no Back-up Bidder selected by the Plan Administrator, after consultation with VNB, and the Successful Bidder shall fail to timely close the sale of the VNB Real Property and shall default in its obligations to do so in accordance with the provisions the Auction Sale Procedures and VNB is deemed to be the prevailing bidder based on its highest preceding Credit Bid, pursuant to the terms of the Plan and the Confirmation Order, VNB shall receive the Deed for the VNB Real Property at the Closing, free and clear of all other Liens, claims, encumbrances, taxes and interests of any kind or nature whatsoever, subject to the payment by VNB of (aa) all Allowed Real Property Secured Tax Claims attributable to the VNB Real Property at the Closing, and (bb) any amounts necessary to satisfy any amounts due and owing to any Real Property Broker in connection with such Real Property.

In the event that the Successful Bidder or Back-up Bidder, if applicable, acquiring the VNB Real Property is an Entity other than VNB, then VNB shall receive all Cash paid by such Entity at the Closing up to the full amount of the Allowed VNB Secured Claim attributable to the VNB Real Property, in excess of the amounts necessary the pay (aa) all Allowed Real Estate Secured Tax Claims attributable to such Real Property at the Closing, and (bb) the amount necessary to satisfy any amounts due and owing to any Real Property Broker in connection with such Real Property.

(ii)      VNB Plan Contribution.  VNB will deposit the VNB Plan Contribution in the sum of Twelve Thousand Five Hundred ($12,500.00) Dollars with the VNB Escrow Agent, by wire transfer, cashier's check or certified check, so that such funds are actually received by the VNB Escrow Agent by no later than two (2) Business Days following the Confirmation Date.  On or before the date of the Auction, the VNB Escrow Agent will deliver the VNB Plan Contribution to the Plan Administrator, by wire transfer, cashier's check or certified check, so that such funds are actually received by the Plan Administrator on such date, which funds will be deposited by the Plan Administrator in to the Distribution Fund for disbursement in accordance with the terms of the Plan.

**In consideration for the VNB Plan Contribution and the waiver of any right of recovery on account of any Allowed Administrative Expense Claims and any Allowed General Unsecured Claim VNB may have in the Chapter 11 Case, including any unsecured "deficiency" claim VNB may hold against the Debtor, on the Effective Date, except as otherwise provided for herein, the Debtor shall be deemed to have released VNB, and its members, officers, directors, employees, and attorneys, and any of the Real Property or Cash Collateral transferred to VNB under the Plan, from any debt, charge, Causes of Action,**

**liability, encumbrance, Lien, security interest, Claim, Interest, or other cause of action of any kind, nature or description (including, but not limited to, any claim of successor liability).**

(iii)     <u>Full Settlement</u>.  The treatment and consideration to be received by the VNB on account of its Allowed Claim in Class 3 shall be in full settlement and final satisfaction of its Claims against the Debtor; *provided, however*, VNB does not waive and specifically preserves and retains the right to assert any deficiency claims against any third-party obligors.

Class 3 is Impaired under the Plan.

(c)     <u>Class 4: Priority Claims.</u>

Class 4 consists of all Allowed Priority Claims.  The Committee believes that all or substantially all of these claims are misclassified and are instead Class 5 General Unsecured Claims, but the Committee has established this Class in an abundance of caution.  On the later of (i) sixty (60) days following the Effective Date, or (ii) the date on which such Priority Claim becomes an Allowed Priority Claim, or as soon thereafter as practicable, each Holder of an Allowed Priority Claim shall receive Cash from the Distribution Fund in an amount sufficient to render such Allowed Priority Claim Unimpaired under section 1124 of the Bankruptcy Code.

Class 4 is Unimpaired under the Plan.

(d)     <u>Class 5:</u>  <u>General Unsecured Claims.</u>

(i)     <u>Treatment</u>.  Class 5 consists of all Allowed General Unsecured Claims, excluding any part of the Allowed Claims of the Levites Secured Creditors and VNB that constitute an Allowed General Unsecured Claim.  The Levites Secured Creditors and VNB waive any right of recovery on account of any Allowed General Unsecured Claims they may have in the Chapter 11 Case, including any unsecured "deficiency" claims the Levites Secured Creditors and/or VNB may hold against the Debtor; *provided, however*, the Levites Secured Creditors and VNB do not waive and specifically preserve and retain the right to assert any deficiency claims against any third-party obligors.  Each Holder of an Allowed Claim in Class 5 shall be entitled to receive its Pro Rata share of the Cash deposited into the Distribution Fund, if any, after payment in full to all Holders of Allowed Administrative Expense Claims, Allowed Priority Tax Claims and Allowed Priority Claims.  Subject to the terms hereof, including the establishment of the reserves provided for herein, the Plan Administrator shall make distributions to Holders of Allowed General Unsecured Claims in Class 5 from time to time when the Plan Administrator, in his/her discretion, deems appropriate.

(ii)     <u>Full Settlement</u>.  The treatment and consideration to be received by Holders of Allowed Class 5 Claims shall be in full settlement and final satisfaction of their respective Claims.

Class 5 is Impaired under the Plan.

(e)     <u>Class 6: Interests.</u>

(i)     Treatment.  Class 6 consists of Allowed Interests in the Debtor, including, without limitation, any Holders of options, warrants and other rights to acquire equity interests in the Debtor.  Holders of Class 6 Interests shall receive all remaining Cash deposited into the Distribution Fund, if any, after payment in full to all Holders of Allowed Administrative Expense Claims, Allowed Priority Tax Claims, Allowed Priority Claims, and Allowed General Unsecured Claims.  If there are no such funds remaining in the Distribution Fund after payment in full of all such Allowed Claims, Holders of Allowed Interests shall not receive or retain any property on account of their Interests other than their Interests in the Post-confirmation Debtor.

(ii)     Full Settlement.  The treatment and consideration to be received by Holders of Allowed Class 6 Interests shall be in full settlement and final satisfaction of their respective Interests.

Class 6 is Impaired under the Plan.

C.     Sources Of Cash To Make Plan Distributions

Except as otherwise provided in the Plan or the Confirmation Order, all Cash necessary to make distributions and payments required under the Plan to Holders of Allowed Claims will be paid by the Plan Administrator from the Distribution Fund.

D.     Assumption and Rejection of Executory Contracts and Unexpired Leases. As of the Effective Date, any executory contract or unexpired lease that has not been expressly assumed or rejected with approval by order of the Bankruptcy Court shall be deemed to have been rejected unless (a) there is then pending before the Bankruptcy Court a motion to assume such unexpired lease or executory contract, or (b) the Bankruptcy Court has entered an order extending the period during which a motion may be made to assume such unexpired lease or executory contract, and such a motion is filed with the Bankruptcy Court before the expiration of such period. The Disclosure Statement and the Plan shall constitute due and sufficient notice of the intention to reject all executory contracts and unexpired leases that are not otherwise assumed.   The Confirmation Order shall be deemed an order under section 365(a) of the Bankruptcy Code rejecting any such executory contracts and unexpired leases that are not otherwise assumed.

E.     Bar Date for Rejection Damage Claims.  Unless otherwise provided for by an order of the Bankruptcy Court entered on or prior to the Confirmation Date, any Rejection Damage Claim for an executory contract or unexpired lease rejected by the Plan must be filed with the Bankruptcy Court on or before the Rejection Bar Date (i.e., within fifteen (15) days of the Effective Date of the Plan), with a copy thereof upon (i) Westerman Ball, 1201 RXR Plaza, Uniondale, New York 11556, Attn.: Thomas A. Draghi, Esq.; (ii) the Plan Administrator, Salvatore LaMonica, Esq., LaMonica, Herbst & Maniscalco, LLP, 3305 Jerusalem Avenue, Wantagh, New York 11793; and (iii) the United States Trustee for the Eastern District of New York, 271 Cadman Plaza East, Suite 4529, Brooklyn, New York 11201, Attn.: Jacqueline A. Frome, Esq.  Any Entity that fails to file and serve its Rejection Damage Claim within the period set forth above shall be forever barred from asserting a Claim against the Debtor, the Estate, the Post-confirmation Estate or any Property or interests in Property of the Debtor or the Post-confirmation Estate.  All Allowed Rejection Damage Claims shall be classified as General Unsecured Claims (Class 5) under the Plan.

F.    Means For Effectuating The Plan

       1.    General.  On the Effective Date, the Plan Administrator shall assume control over the Debtor's and Estate's assets, including the Real Property (and, subject to the rights of the Levites Secured Creditors under the Levites Cash Collateral Stipulation, the Levites Cash Collateral until it is turned over and delivered to the Levites Secured Creditors in accordance with the terms hereof), and shall be authorized to continue the usual and ordinary operations of the Debtor in the ordinary course of the Debtor's business pending the Closing for each particular Real Property in accordance with the terms hereof, and to spend funds of the Debtor, the Estate and the Post-confirmation Estate for such purpose.  The Plan Administrator shall also cause the Real Property to be sold at a public Auction in accordance with the terms hereof, including the Auction Sale Procedures.

       2.    Sale of the Real Property in Accordance With the Auction Sale Procedures.

       (a)    The Real Property shall be sold at the Auction in accordance with the Auction Sale Procedures (which are annexed to the Plan at Exhibit "B") and the terms thereof, which shall govern all aspects of the sale.

       (b)    The Plan Administrator will schedule the Auction, which will take place two (2) Business Days after the Confirmation Order becomes a Final Order, or such later date as may be agreed to by and among the Plan Administrator, the Levites Secured Creditors, and VNB or otherwise established by the Bankruptcy Court, at the offices of Westerman Ball, or such other location agreed to by and among the Plan Administrator, the Levites Secured Creditors, and VNB. With respect to each particular Real Property, if the Plan Administrator determines in his/her discretion, after consultation with the Levites Secured Creditors if it involves a Levites Real Property, or VNB if it involves the VNB Real Property, that there are no submissions by Qualified Bidders other than the applicable Levites Secured Creditors with a Lien on such Levites Real Property, or VNB if it involves the VNB Real Property by the Qualified Bidder Deadline, then such Secured Creditor will be deemed to be the Successful Bidder for such Real Property pursuant to its Opening Credit Bid for such Real Property.

       (c)    With respect to each particular Levites Real Property, the applicable Levites Secured Creditor(s) holding a Lien secured by such Levites Real Property is deemed a Qualified Bidder with an initial bid in the amount of the Opening Credit Bid for such Levites Real Property as set forth on Exhibit "A" hereto and has the right, *but not the obligation*, in its/their sole discretion, to Credit Bid up to the full amount of its/their Allowed Secured Claims attributable to such Levites Real Property as set forth on Exhibit "A".  If such Levites Secured Creditor(s) shall be the Successful Bidder or otherwise entitled to acquire such particular Levites Real Property in accordance with the Auction Sale Procedures, it shall have the right to assign its successful Credit Bid and the right to close thereunder at or prior to the Closing for such Levites Real Property.  Any such assignee shall be entitled to all of the rights of the Levites Secured Creditor under the Plan, including but not limited to the right to take title to the Levites Real Property free and clear of any Transfer Taxes and free and clear of any anti-assignment provisions under any assigned contracts or applicable law.

(d)  With respect to the VNB Real Property, VNB is deemed a Qualified Bidder with an initial bid in the amount of the Opening Credit Bid for the VNB Real Property as set forth on Exhibit "A" hereto and has the right, *but not the obligation*, in its sole discretion, to Credit Bid up to the full amount of its Allowed Secured Claim attributable to the VNB Real Property as set forth on Exhibit "A". If VNB shall be the Successful Bidder or otherwise entitled to acquire the VNB Real Property in accordance with the Auction Sale Procedures, it shall have the right to assign its successful Credit Bid and the right to close thereunder at or prior to the Closing for the VNB Real Property. Any such assignee shall be entitled to all of the rights of VNB under the Plan, including but not limited to the right to take title to the VNB Real Property free and clear of any Transfer Taxes and free and clear of any anti-assignment provisions under any assigned contracts or applicable law.

(e)  The Confirmation Order shall contain appropriate provisions, consistent with section 1142(a) of the Bankruptcy Code, directing the Plan Administrator to execute or deliver or to join in the execution or delivery of any and all instruments required to effect a transfer of each Real Property, including without limitation the Deed for each Real Property, and to perform any act, including the satisfaction of any Lien, that is necessary for the consummation of the Plan.

(f)  Pending the Closing of the sale of each particular Real Property, the Levites Secured Creditor shall be authorized, with respect to the Levites Real Property, and VNB shall be authorized with respect to the VNB Real Property, to continue to maintain and preserve such Real Property.

3.  Transfer Taxes.  With respect to each particular Real Property, the consummation of the Closing for such Real Property shall be deemed a transfer under, pursuant to, in connection with and in furtherance of the Plan, and such sale, transfer and delivery of any and all instruments of transfer, including without limitation the Deed, in connection therewith shall not be taxed under any Transfer Taxes permitted by § 1146(a) of the Bankruptcy Code as interpreted by the Supreme Court in *Florida Department of Revenue v. Piccadilly Cafeterias, Inc.*, 128 S.Ct. 2326 (2008). Such exemption shall include any transfer of the Levites Real Property and the Cash Collateral to the Levites Secured Creditors, and the VNB Real Property to VNB, and each of their respective immediate assignees.

4.     Transfer of Assets.  With respect to each particular Real Property, at the Closing for such Real Property, the particular Real Property shall be transferred to (a) the Successful Bidder or, (b) if for any reason the Successful Bidder shall fail to timely close the sale of such Real Property and the Plan Administrator, in his/her discretion, after consultation with the Levites Secured Creditors if it involves any of the Levites Real Property, or with VNB if it involves the VNB Real Property, determines to proceed with the Back-up Bid, the Back-up Bidder, or (c) if (i) the Back-up Bidder shall fail to timely close the sale of such Real Property and shall default in its obligations to do so in accordance with the provisions of Auction Sale Procedures, or (ii) if there shall be no Back-up Bidder selected by the Plan Administrator, after consultation with the applicable Secured Creditor(s), and the Successful Bidder shall fail to timely close the sale of such Real Property and shall default in its obligations to do so in accordance with the provisions the Auction Sale Procedures and, either the applicable Levites Secured Creditor(s) or VNB is deemed to be the prevailing bidder based on its highest preceding Credit Bid, in accordance with the Plan. In connection therewith, the Entity acquiring such Real Property shall receive (w) the Deed for such Real Property, executed by the Plan Administrator for and on behalf of the Debtor and its Estate to be recorded in the appropriate office of the County Clerk or such other applicable recording offices and location(s) as may be appropriate; (x) together with any and all New York State and other governmental transfer tax returns; and (y) any and all affidavits, certificates and other documents which may be necessary or are usual and customary to facilitate the recording of the Deed subject to the Bankruptcy Code section 1146(a) exemption, and to effectuate the transfer of such Real Property.  The Debtor, the Levites Secured Creditors, VNB, the Creditors' Committee and the Plan Administrator do not make any representations or warranties whatsoever.  Each particular Real Property is being sold pursuant to the Plan "AS IS", "WHERE IS" in their condition on the Closing Date or, Back-up Closing Date, if applicable, without any representations, covenants, guarantees or warranties by the Debtor, the Levites Secured Creditors, VNB, the Creditors' Committee or the Plan Administrator of any kind or nature whatsoever, and free and clear of any Liens, claims or encumbrances of whatever kind or nature accrued through the date of the Auction (including, without limitation, any leases or use and occupancy agreements relating to the Real Property), with such Liens, claims, or encumbrances, if any, to attach to the proceeds of sale, and subject to any Liens, claims or encumbrances of whatever kind or nature thereafter accrued, but entitled to the benefits and subject to the burdens of all easements of record against such Real Property as of the date of the Auction.  Any such Liens, claims or encumbrances of whatever kind or nature accruing from and after the date of the Auction shall be the responsibility of the Entity acquiring such Real Property at the Closing, whether it be either any of the Levites Secured Creditors or VNB through a Credit Bid or another Entity in accordance with the terms of the Plan and Auction Sale Procedures.

5.     Cooperation of the Plan Administrator and Debtor's Principal. The Plan Administrator and his/her authorized signatories shall, at all times, reasonably cooperate with the Levites Secured Creditor(s), VNB or such other Successful Bidder or Back-up Bidder, if applicable, and any of their respective successors and assigns.  The Debtor's principal, Harry Terezakis, shall, at all times, reasonably cooperate with the Levites Secured Creditor(s), VNB or such other Successful Bidder or Back-up Bidder, if applicable, the Plan Administrator and any of their respective successors and assigns in connection with the Auction, any Closing for the sale of any Real Property, and the administration of the Post-confirmation Estate.

6.      Cooperation of the Plan Administrator. The Plan Administrator and his/her authorized signatories shall, at all times, reasonably cooperate with the Levites Secured Creditor(s), VNB or such other Successful Bidder or Back-up Bidder, if applicable, and any of their respective successors and assigns.  The Debtor's principal, Harry Terezakis, shall, at all times, reasonably cooperate with the Levites Secured Creditor(s), VNB or such other Successful Bidder or Back-up Bidder, if applicable, the Plan Administrator and any of their respective successors and assigns in connection with the Auction, any Closing for the sale of any Real Property, and the administration of the Post-confirmation Estate

7.      Funding.   The funds needed to pay all U.S. Trustee Fees, Allowed Administrative Expense Claims, Allowed Priority Tax Claims and Allowed Priority Claims will be paid from the Distribution Fund, which includes, *inter alia*, the Levites Plan Contribution and the VNB Plan Contribution.  With respect to each particular Real Property, the Allowed Real Property Secured Tax Claims (Class 1) attributable to such Real Property will be paid at the Closing by either the particular Secured Creditor(s) making a Credit Bid, if such Secured Creditor acquires such Real Property pursuant to such Credit Bid, or the Entity acquiring such Real Property in accordance with the terms of the Plan, including the Auction Sale Procedures.

8.      Management of the Debtor. On and after the Effective Date, the Post-confirmation Estate will be managed and administered by the Plan Administrator.

9.      Execution of Documents. The Plan Administrator shall execute, release and deliver, for and on behalf of the Debtor and its Estate, all documents reasonably necessary to consummate the transactions contemplated by the terms and conditions of the Plan, including without limitation, any documents required in connection with the Closing and the sale of each Real Property in accordance with the Plan.

10.      Filing of Documents.  Pursuant to sections 105, 1141(c), 1142(b) and 1146(a) of the Bankruptcy Code, each and every federal, state and local governmental agency or department, shall be directed to accept and record any and all documents and instruments necessary, useful or appropriate to effectuate, implement and consummate the transactions contemplated by the Plan, and any and all notices of satisfaction, release or discharge or assignment of any Lien, Claim or encumbrance not expressly preserved by the Plan.

11.      Transactions on Business Days.  If the Effective Date or any other date on which a transaction may occur under the Plan shall occur on a day that is not a Business Day, the transactions contemplated by the Plan to occur on such day shall instead occur on the next succeeding Business Day.

12.      Implementation.  Pursuant to the Confirmation Order and upon confirmation of the Plan, the Debtor, the Committee and the Plan Administrator shall be authorized to take all necessary steps, and perform all necessary acts, to consummate the terms and provisions of the Plan.  On or before the Effective Date, the Plan Administrator or the Committee may file with the Bankruptcy Court such agreements and other documents as may be necessary or appropriate to effectuate or further evidence the terms and provisions of the Plan and the other agreements referred to herein.  The Debtor, the Committee, the Post-confirmation Debtor and the Plan Administrator are

hereby authorized, and shall, execute such documents and take such other actions as are necessary to effectuate the transactions provided for in the Plan, without the need for any additional approvals, authorizations or consents. Upon the completion of all acts required to be performed by the Plan Administrator under the Plan and/or the filing by the Plan Administrator of a certification to that effect with the Bankruptcy Court (which may be included in the application for entry of the final decree), the Plan Administrator shall be relieved of his/her duties under the Plan for all purposes without the necessity for any other or further actions to be taken by or on behalf of the Plan Administrator, the Post-confirmation Estate, or payments to be made in connection therewith. From and after the Effective Date, the Post-confirmation Estate and the Plan Administrator shall not be required to file any document, or take any action, to withdraw the Debtor's business operation from any States where the Debtor previously conducted business operations.

13. <u>Initial Funding for the Plan</u>. The initial funding of the Plan will be from the Levites Plan Contribution and the VNB Plan Contribution. Within two (2) Business Days of the Confirmation Order becoming a Final Order, the Levites Escrow Agent shall turn over and deliver the Levites Plan Contribution, and the VNB Escrow Agent shall deliver and turn over the VNB Plan Contribution to the Plan Administrator to be deposited into the Distribution Fund. On the Effective Date, the Debtor shall turn over to the Plan Administrator, for administration in accordance with the Plan, the entire Post-confirmation Estate. The Plan Administrator, on behalf of the Post-confirmation Estate and Holders of Allowed Claims, shall distribute such Cash in accordance with the provisions of the Plan. The Levites Cash Collateral shall not constitute part of Post-confirmation Estate.

G. <u>Post-confirmation Estate.</u>

1. <u>Creation of Post-confirmation Estate.</u> On the Effective Date, a Post-confirmation Estate will be created from which payment in connection with all remaining Allowed Administrative Expense Claims, Allowed Priority Tax Claims, Allowed Secured Claims, Allowed Priority Claims, Allowed General Unsecured Claims, together with the Operating Expenses shall be paid.

2. <u>Appointment of the Plan Administrator</u>. On the Confirmation Date, the Plan Administrator will be designated pursuant to Court order. The appointment of the Plan Administrator will be pursuant to the Plan and Confirmation Order and he/she will have the powers and responsibilities of a disbursing agent and trustee as set forth herein.

3. <u>Vesting of Estate Assets</u>. On the Effective Date, and in accordance with the Confirmation Order, the Post-confirmation Estate Assets shall remain with and vest in thePost-confirmation Estate under the control of the Plan Administrator, to be administered in accordance with the terms of the Plan.

4. <u>Preservation and Vesting of Claims, Rights, Demands and Causes of Action</u>. Pursuant to section 1123 of the Bankruptcy Code, the Plan Administrator, on behalf of and for the benefit of the Post-confirmation Estate, shall be vested with, shall retain, and shall have the authority to prosecute and enforce any and all claims, controversies, agreements, promises, accounts, rights to legal remedies, rights to equitable remedies, rights, demands and Causes of

Action of any kind or nature whatsoever held by, through, or on behalf of the Debtor, its Estate, the Post-confirmation Debtor and/or the Post-confirmation Estate, including, without limitation, all Causes of Action of a trustee and debtor-in-possession under the Bankruptcy Code, including, without limitation, under sections 544, 545, 547, 548, and 549 of the Bankruptcy Code, against any other Entity arising before or after the Effective Date that have not been fully resolved or disposed of prior to the Effective Date, whether or not such Claims or Causes of Action are specifically identified in the Disclosure Statement accompanying the Plan and whether or not litigation with respect to same has been commenced prior to the Effective Date. The Plan Administrator will also be authorized to challenge, object to and/or settle disputed Claims, without first having to seek approval from the Bankruptcy Court, in accordance with the terms and provisions hereof. The Plan Administrator will be authorized and empowered to bind the Post-confirmation Estate thereto. Any settlement by the Plan Administrator pursuant to and in accordance with the terms hereof shall be conclusively deemed to be in the best interests of the Post-confirmation Estate

        5.      Recoveries. All Cash, proceeds and/or recoveries from the Causes of Action and all other proceeds derived from the Plan Administrator's liquidation of Post-confirmation Estate Assets will be included in the Post-confirmation Estate and added to the Distribution Fund and administered and disbursed in accordance with the provisions of the Plan.

        H.      The Plan Administrator.

        1.      Appointment. In the Confirmation Order, the Plan Administrator will be appointed and will be bound to perform as required by the Plan.

        The Committee has designated Salvatore LaMonica of LaMonica, Herbst & Maniscalco, LLP to serve as Plan Administrator under the Plan. The Committee selected Mr. LaMonica because of his experience and knowledge in this area and his ability to commit the time and effort necessary to serve as Plan Administrator in the Chapter 11 Case. Mr. LaMonica is a member of the Panel of Trustees for the United States Bankruptcy Court for the Southern District of New York. He has extensive experience in bankruptcy cases and has been charged with liquidating the remaining estates in various cases. Additionally, Mr. LaMonica is regularly involved in advising distressed companies in connection with both in-court and out-of-court restructurings and liquidations, and serving as counsel to numerous creditors in cases throughout the country. The Committee understands that Mr. LaMonica has performed a conflicts check with respect to this matter and, to the best of their knowledge, information and belief, neither Mr. LaMonica nor his law firm holds or represents any interest adverse to the Debtor, and he is a "disinterested person" within the meaning of section 101(14) of the Bankruptcy Code.

        2.      Duties and Powers. (i) On the Effective Date, the Plan Administrator will be the representative of the Post-confirmation Estate and successor to the Debtor pursuant to section 1123(b)(3)(B) of the Bankruptcy Code, and will have the rights and powers provided in the Bankruptcy Code, in addition to any rights and powers granted herein and in the Confirmation Order. In the Plan Administrator's capacity as the representative of the Post-confirmation Estate and successor to the Debtor and the Estate, the Plan Administrator will be the successor-in-interest to the Debtor with respect to all Causes of Action and other interests constituting Post-confirmation Estate Assets and with respect to the Claims of Creditors. The Plan Administrator shall act in a

fiduciary capacity for the Holders of all Allowed Claims under the Plan and shall have all of the rights, powers and duties of a debtor in possession under sections 1107 and 1108 of the Bankruptcy Code. The Plan Administrator shall, in his/her discretion, assume all of the responsibilities, duties and obligations of the Debtor's former officers and directors that arise after the Effective Date of the Plan and is empowered and authorized to satisfy any such responsibilities, duties, and obligations so assumed without further corporate authority as may have been required prior to the Effective Date. The Plan Administrator will, in his/her discretion, pay from the Post-confirmation Estate all ordinary and necessary costs of protecting, preserving, disposing, liquidating and realizing upon the Post-confirmation Estate. The Plan Administrator is authorized to investigate and, if necessary, litigate any Cause of Action on behalf of the Debtor and shall have standing as a representative of the Post-confirmation Estate to pursue any Causes of Action and Claims objections, whether initially filed by the Debtor or the Plan Administrator, and the Plan Administrator may assert any defenses that may otherwise have been asserted by a trustee under the Bankruptcy Code. The Plan Administrator shall prosecute or defend, as appropriate, such actions through final judgment, any appeals deemed necessary and appropriate by the Plan Administrator, and the Plan Administrator shall have the power and authority (aa) to enter into such settlements as the Plan Administrator deems to be in the best interest of creditors, subject to Bankruptcy Court approval after notice and a hearing in accordance with Bankruptcy Rule 9019; or (bb) to abandon, dismiss and/or decide not to prosecute any such litigation if the Plan Administrator deems such action to be in the best interest of creditors. The Plan Administrator shall also be vested with all rights, powers, and benefits afforded to a "trustee" under 11 U.S.C. § 108. The Plan Administrator will liquidate and administer the Post-confirmation Estate Assets, will object to/challenge/settle all Disputed Claims, and will make distributions from the Post-confirmation Estate, all in accordance with the terms of the Plan. Unless otherwise excused or exempted from doing so by the Bankruptcy Code, the Plan Administrator will abide by all laws, including tax laws. The Plan Administrator shall have sole and exclusive authority for the retention of professionals to assist in any manner on and after the Effective Date, which includes the retention of Westerman Ball as counsel and CBIZ as financial advisors to the Plan Administrator. (ii) The Plan Administrator will have the power to take any and all actions which, in the business judgment of the Plan Administrator, as are necessary or appropriate to fulfill his/her obligations under the Plan, including, but not limited to, each of the powers set forth below:

(aa)     hold, manage, protect, administer, collect, sell, liquidate, prosecute, transfer, resolve, settle, adjust, invest, distribute, or otherwise dispose of any Post-confirmation Estate Assets solely for the benefit of Holders of Allowed Claims in accordance with the Plan;

(bb)     reconcile Claims and contest objectionable Claims and Disputed Claims;

(cc)     make all Distributions to be funded under the Plan;

(dd)     assume control over all of the Debtor's and Estate's assets and any operation of the Real Property, and shall be authorized, in his/her discretion, to continue the usual and ordinary operations of the Debtor in the ordinary course of the Debtor's business pending the Closing for the sale of each particular Real Property in accordance with the

terms hereof, and to spend funds of the Debtor and the Post-confirmation Estate for such purpose;

(ee)     pay all necessary expenses incurred in connection with the duties and responsibilities of the Plan Administrator under the Plan to the extent of available funds;

(ff)     administer, implement and enforce all provisions of the Plan;

(gg)     administer the Plan and the Post-confirmation Estate Assets;

(hh)     abandon any Post-confirmation Estate Assets;

(ii)     to invest Cash in accordance with section 345 of the Bankruptcy Code or otherwise as permitted by order of the Bankruptcy Court;

(jj)     to purchase and carry all insurance policies and pay all premiums and costs deemed necessary and advisable;

(kk)     undertake such other responsibilities as are reasonable and appropriate in connection with the Plan; and

(ll)     conduct the Auction and take such other actions as may be necessary in connection with the Closing for each particular Real Property.

      3.    <u>Reporting Requirements</u>. The Plan Administrator shall prepare and maintain distribution schedules with respect to all Classes of Claims. As soon as practicable following the Confirmation Date, but no later than the Effective Date, the Debtor shall prepare and deliver to the Plan Administrator Distribution schedules with respect to Administrative Claims (except for Professional Fees), and for all other Classes of Claims, including Disputed Claims. Except as otherwise agreed to by the affected Claimant or as estimated under a Final Order, the entire amount of the Disputed Claim shall be included in the schedules for purposes of computing any Pro Rata Distribution payable to any holder of a Claim on any Distribution Date hereunder. The Plan Administrator shall reserve and maintain the Pro Rata Distribution payable to a holder of a Disputed Claim until entry of an order of the Bankruptcy Court or such other court having jurisdiction over the matter with respect to such Claim. When all objections to all Claims have been resolved by a Final Order or otherwise in accordance with the terms hereof, and all Post-confirmation Estate Assets have been converted to Cash or abandoned, the Plan Administrator shall compute the final Pro Rata share of all Claimants and distribute the Cash on the Final Distribution Date. Approximately ninety (90) days following the date of the Effective Date, the Plan Administrator shall file with the Bankruptcy Court and serve on the United States Trustee and those parties who have requested special notice post-confirmation, a status report and a summary financial update explaining what progress has been made toward entry of the Final Decree, including a statement of all disbursements made pursuant to the Plan along with an estimated date when an application for a Final Decree will be filed with the Court. Until entry of the Final Decree, further status reports shall be filed periodically approximately every ninety (90) days and served on the same entities.

Each status report shall generally include a description of Post-confirmation Estate Assets sold or otherwise realized upon during the relevant period, gross and net proceeds received, distributions and payments made, expenses incurred and paid, and cash on hand. A standard Post-Confirmation Operating Report as required by the United States Trustee shall meet the requirements of this status report.

    4. <u>Compensation.</u> The Post-confirmation Estate shall pay reasonable compensation for the services provided by the Plan Administrator and any other professionals or other Entities retained by the Plan Administrator as permitted under the Plan. The Plan Administrator shall be entitled to receive from the Post-confirmation Estate compensation for his/her services hereunder based on an hourly rate of $525 per hour for actual time spent, plus reasonable out of pocket expenses.

The Plan Administrator shall have the authority to employ and retain any professionals as the Plan Administrator may select to assist the Plan Administrator in his/her duties, on such terms, including contingency-fee arrangements, as the Plan Administrator reasonably deems appropriate, without Bankruptcy Court approval, subject to the terms and provisions of the Plan. All reasonable fees and expenses incurred in connection with the performance of his/her duties and obligations as Plan Administrator on behalf of the Post-confirmation Estate including, without limitation, the fees and expenses of the Plan Administrator, any accountants, attorneys, real estate broker, property manager and other professionals engaged by the Plan Administrator, shall be paid out of Post-confirmation Estate, subject to the terms and provisions hereof.
.

    **5.** **<u>Plan Administrator Post-Effective Date</u>. Except as provided in Section 9.16(e) of the Plan, the Plan Administrator, together with his/her law firm, officers, directors, partners, members, employees, agents, attorneys, accountants, financial and other advisors, and representatives, are exculpated pursuant to the Plan from all Entities, Holders of Claims and Interests, and all other parties in interest, from any and all Causes of Action arising out of the discharge by the Plan Administrator of the powers and duties conferred upon the Plan Administrator by the Plan, any Final Order of the Bankruptcy Court entered pursuant to or in the furtherance of the Plan, or applicable law, <u>except</u> solely for actions or omissions arising out of the Plan Administrator's willful misconduct or gross negligence. No Holder of a Claim or an Interest, or representative thereof, shall have or pursue any Cause of Action (i) against the Plan Administrator or his/her law firm, officers, directors, partners, members, employees, agents, attorneys, accountants, financial and other advisors, and representatives for making Plan Distributions in accordance with the Plan, or (ii) against any Holder of a Claim for receiving or retaining Plan Distributions as provided for by the Plan or against the Levites Secured Creditors for receiving or retaining any proceeds of the Levites Cash Collateral in accordance with the Levites Cash Collateral Stipulation. Nothing contained in this section 9.16(e) shall preclude or impair any Holder of an Allowed Claim from bringing an action in the Bankruptcy Court against the Post-confirmation Estate to compel the making of Distributions contemplated by the Plan on account of such Allowed Claim.**

    6. <u>Post-confirmation Debtor</u>. Neither the confirmation of the Plan nor the occurrence of the Effective Date shall terminate the existence of the Debtor. The Debtor may

dissolve after the occurrence of the entry of a Final Decree if it so desires. Neither the Committee nor the Plan Administrator shall be responsible for (a) maintaining the corporate existence of the Debtor; (b) dissolving or otherwise terminating the existence of the Debtor; or (c) filing any tax returns on behalf of the Debtor, its Estate or Post-confirmation Estate. The Debtor's principals shall be responsible for preparing or causing to be prepared all local, state, or federal tax returns, filings, and/or reports that are necessary or appropriate.

       7.    <u>Dissolution of Committee</u>. As of the Effective Date, the Committee shall be deemed dissolved and the duties, powers, responsibilities and rights of the Committee and its agents shall terminate, *ipso facto*

       8.    <u>Prosecution of Objections to Claims; Amendment of Schedules</u>. The Plan Administrator reserves the right and shall continue to have authority, subsequent to the Confirmation Date but prior to the case being closed, to object to any Claim or request for allowance of an Administrative Expense Claim, whether included on the Debtor's Schedules or reflected in a proof of claim filed with the Bankruptcy Court, and to initiate contested matters and to initiate such proceedings as may be necessary and appropriate in the Bankruptcy Court for a determination of the Allowed Amount of any and all Claims or requests for allowance of Administrative Expense Claims.

    I.    <u>Provisions Covering Distributions</u>

       1.    <u>Timing of Distributions Due Under Plan</u>. (a) All Distributions and payments required under the Plan to Holders of Allowed Claims will be paid from the Post-confirmation Estate on the dates and in the manner indicated in the Plan. Except as otherwise provided in the Plan, without in any way limiting Sections 11.5 and 11.6 below, and subject to Section 14.2 below, Distributions in respect of (i) the Allowed Real Property Secured Tax Claims in Class 1 of the Plan shall be made by the Plan Administrator as set forth in Section 5.1; (ii) Allowed Levites Secured Claims in Class 2 of the Plan shall be made by the Plan Administrator as set forth in Section 5.2; (iii) the Allowed VNB Secured Claim in Class 3 of the Plan shall be made by the Plan Administrator as set forth in Section 5.3; (iv) Allowed Priority Claims in Class 4 of the Plan shall be made by the Plan Administrator as set forth in Section 5.4; (v) Allowed General Unsecured Claims in Class 5 of the Plan shall be made by the Plan Administrator as set forth in Section 5.4; and (iv) all other Allowed Claims that are required by the Plan to be made under the Plan shall be made by the Plan Administrator from the Post-confirmation Estate Assets on, or as soon as practicable following, the dates provided for such Allowed Claims under the Plan.

       2.    <u>Manner of Distributions</u>. At the option of the Plan Administrator, Distributions from the Post-confirmation Estate may be made by wire transfer, check, or such other method as the Plan Administrator deems appropriate under the circumstances. No Distributions shall be required to be made to any Holder of an Allowed Claim in an amount less than fifty ($50.00) dollars, unless request is made, in writing, to the Plan Administrator.

       3.    <u>Cash Payments</u>. Cash payments made pursuant to the Plan will be in U.S. dollars. Cash payments made pursuant to the Plan in the form of checks issued by the Debtor or the Plan Administrator shall be void if not cashed within one hundred twenty (120) days of the date of

the issuance. Requests for reissuance of any check shall be made directly to Plan Administrator or her/his designee as set forth in Section 10.8 of the Plan.

4.     <u>Disputed Claims Reserve</u>. (a) Within sixty (60) days of the Effective Date, or as soon thereafter as the Plan Administrator shall determine in his/her discretion, the Plan Administrator shall establish the Disputed Claims Reserve. For purposes of establishing the Disputed Claims Reserve, the Plan Administrator shall reserve for each Disputed Claim at the Maximum Amount. On the date of any Distribution, the Plan Administrator shall deposit into the Disputed Claims Reserve Cash equal to the amount that would be distributable to all Holders of Disputed Claims in respect of all Distributions made on that date, if such Disputed Claims were Allowed in the respective Maximum Amounts. The Plan Administrator shall maintain the Disputed Claims Reserve in a segregated, interest bearing account and shall keep records as to the applicable amounts reserved in respect of each Disputed Claim. The Plan Administrator shall pay any taxes due and owing with respect to the Disputed Claims Reserve, and reserve all Distributions on account of the Disputed Claims, net of such taxes; *provided, however,* that the Plan Administrator may contest in good faith any tax that any taxing authority determines is owed by the Post-confirmation Estate.

(b)     In the event any Disputed Claim becomes an Allowed Claim, the amount of such Allowed Claim shall never exceed the Maximum Amount and the Plan Administrator shall distribute to the Holder of such Allowed Claim from the Disputed Claims Reserve the aggregate amount of Cash that such Holder would have received through the date of such Distribution in respect of such Disputed Claim as if such Claim has been an Allowed Claim as of the Effective Date.

(c)     From time to time as Disputed Claims are Disallowed or become Allowed Claims in amounts less than its respective Maximum Amounts, the Cash deposited in the Disputed Claims Reserve that otherwise would have been distributed to the holders of such Disputed Claims if such Disputed Claims subsequently had become Allowed Claims in an amount equal to their respective Maximum Amounts (and which as a result is not distributable to such Holders pursuant to this Section 11.3 of the Plan) shall be released from and no longer held in the Disputed Claims Reserve and, subject to the provisions of Sections 10.3, 11.5 and 11.6 of the Plan, shall be distributed in accordance with this Section 10.1 of the Plan.

5.     <u>Payment of Statutory Fees</u>. All fees payable pursuant to 28 U.S.C. § 1930 as determined by the Bankruptcy Court as of the Confirmation Date shall be paid by the Plan Administrator on or before the Effective Date from the Distribution.

6.     <u>No Interest</u>. Except with respect to Holders of Unimpaired Claims entitled to interest under applicable non-bankruptcy law or as otherwise expressly provided herein, no Holder of an Allowed Claim, including, without limitation, Holders of Allowed General Unsecured Claims under Class 5 of the Plan shall receive interest on any Distribution to which such Holder is entitled hereunder, regardless of whether such Distribution is made on the Effective Date or thereafter.

7.     <u>Withholding of Taxes</u>. (a) The Plan Administrator may withhold from any Property to be distributed under the Plan any Property which must be withheld for taxes payable by

the Entity entitled to such Distribution to the extent required by applicable law. As a condition to making any Distribution under the Plan, the Plan Administrator may request that the Holder of any Allowed Claim provide such Holder's taxpayer identification number and such other certification or documentation as may be deemed necessary to comply with applicable tax reporting and withholding laws.

(b) Notwithstanding any other provision of the Plan, each Entity receiving a Distribution of Cash pursuant to the Plan will have sole and exclusive responsibility for the satisfaction and payment of any tax obligations imposed on it by any governmental unit on account of such Distribution, including income, withholding and other tax obligations..

8. <u>Undeliverable or Unclaimed Distributions</u>. (a) All Distributions under the Plan to any Holder of an Allowed Claim shall be made at the address of such Holder as set forth on the lists to be provided by the Debtor to the Plan Administrator unless the Plan Administrator has been notified in writing after the Effective Date of a change of address. Any Entity that is entitled to receive a Cash Distribution under the Plan but that fails to cash a check within one hundred twenty (120) days of its issuance shall be entitled to receive a reissued check from the Plan Administrator for the amount of the original check, without any interest, if such Entity (i) requests, in writing, the Plan Administrator to reissue such check, and (ii) provides the Plan Administrator with such documentation as the Plan Administrator requests to verify in her/his sole discretion that such Entity is entitled to such check. If an Entity fails to cash any check within one hundred twenty (120) days of its issuance or fails to request re-issuance of such check within one hundred twenty (120) days of its issuance, such Entity shall be deemed to have forfeited the amount of the Distribution or Post-confirmation Estate provided for in such check. Any such forfeited Distributions shall revert to the Post-confirmation Estate and the Claim of any Holder or successor to such Holder with respect to such forfeited Distributions shall be discharged and forever barred, notwithstanding any other provisions in the Plan or any federal or state escheat laws to the contrary.

(a) In the event that any Distribution to any Holder of an Allowed Claim is returned to the Plan Administrator as undeliverable, no further Distributions will be made to such Holder unless and until the Plan Administrator is notified in writing of such Holder's then-current address. All claims for undeliverable Distributions for which no check is issued, must be made within one hundred twenty (120) days of the issuance of the original check. After such date, all unclaimed Distributions shall revert to the Post-confirmation Estate and the claim of any Holder or successor to such Holder with respect to such Distribution shall be forfeited, discharged and forever barred, notwithstanding any provisions in the Plan or any federal or state escheat laws to the contrary. Upon such forfeiture of Cash or other Post-confirmation Estate property, such Cash or Post-confirmation Estate Assets shall be the property of the Post-confirmation Estate undeliverable or Unclaimed Distributions.

9. <u>Post Effective Date Services by the Plan Administrator's Professionals</u>. From and after the Effective Date, Westerman Ball shall serve as counsel, and CBIZ as financial advisor for the Plan Administrator, without further order of the Bankruptcy Court, for the purpose of rendering services as necessary to assist the Plan Administrator to consummate the Plan, including in connection with the Auction and Closings contemplated by the Plan. Such services shall also include the liquidation of the Post-confirmation Estate Assets, objecting to Disputed

Claims, prosecuting Causes of Action, and effecting Distributions to Holders of Allowed Claims. The reasonable fees and expenses of the Plan Administrator and professionals retained by the Plan Administrator incurred after the Confirmation Date shall constitute Operating Expenses of the Post-confirmation Estate and shall be payable upon presentment of a monthly statement for services rendered and for reimbursement of expenses to the Plan Administrator. The Plan Administrator shall have ten (10) days from the receipt of any such fee and expense statements to dispute all or part of such statement. Upon the expiration of said ten (10) days, the Plan Administrator shall pay such professionals the undisputed portion of such fees and expenses. Any disputes shall be submitted to the Bankruptcy Court for determination. A law firm, accountant or other Professional shall not be disqualified from representing or otherwise serving the Plan Administrator or the Post-confirmation Estate solely because of its current or prior retention as counsel or professional to the parties in interest in the Chapter 11 Case.

J.    Procedures For Resolving Disputed Claims

1.    Objections to Claims.  From and after the Effective Date, (a) only the Plan Administrator (by and through his retained professionals) shall have the authority to file or litigate to judgment objections to Claims, and (b) only the Plan Administrator shall have the right to settle, compromise, and withdraw objections to Claims.  Subject to an order of the Bankruptcy Court providing otherwise, the Plan Administrator may object to a Claim by filing an objection with the Bankruptcy Court and serving such objection upon the Holder of such Claim not later than one hundred twenty (120) days after the Effective Date or one hundred twenty (120) days after the filing of the proof of such Claim, whichever is later, or such other date fixed by the Bankruptcy.

2.    Procedure.  Unless otherwise ordered by the Bankruptcy Court or agreed to by written stipulation of the Plan Administrator, or until an objection thereto by the Plan Administrator is withdrawn, the Plan Administrator (by and through his/her retained professionals as set forth in Section 11.1 hereof) may litigate the merits of each Disputed Claim until a Final Order is entered with respect to such Claim; *provided, however*, that the Plan Administrator may compromise and settle any objection to any Claim.

3.    Payments and Distributions With Respect to Disputed Claims.  No payments or Distributions shall be made in respect of any Disputed Claim until such Disputed Claim becomes an Allowed Claim.

4.    Claims Reserve - Estimation.  For purposes of effectuating the reserve provisions of the Plan, and the allocations and Distributions to Holders of Allowed Claims, the Bankruptcy Court may, on or prior to the Effective Date, or such later date as may be established by the Bankruptcy Court and/or the Plan Administrator, pursuant to section 502 of the Bankruptcy Code, fix or liquidate the amount of any contingent or unliquidated Claim, in which event the amount so fixed will be deemed the Allowed Amount of such Claim for purposes of the Plan or, in lieu thereof, the Bankruptcy Court will determine the maximum contingent or unliquidated amount for such Claim, which amount will be the Maximum Amount in which such Claim ultimately may be Allowed under the Plan, if such Claim is Allowed in whole or in part.  The Bankruptcy Court's entry of the Confirmation Order or any such estimation order may limit the Distribution to be made on individual Disputed Claims from the Post-confirmation Estate, regardless of the amount finally

Allowed on account of such Disputed Claims, and no Holder shall have recourse against the Post-confirmation Estate, the Plan Administrator or any of their respective Professionals, professional consultants, attorneys, advisors, officers, directors, employees, members or their successors or assigns, or any of their respective property, as such Holder's sole recovery shall be from the Distributions to be made to Holders of Allowed Claims (subject to any claims that any Holder may have against any guarantors).

5.　　Distributions After Allowance of Disputed Claims.　Distributions to each Holder of a Disputed Claim, to the extent that such Claim ultimately becomes an Allowed Claim, will be made in accordance with the provisions of the Plan.

6.　　Distributions After Disallowance of Disputed Claims.　Holders of Allowed Claims under the Plan that receive Distributions after Allowance of such Holder's Claim, may receive subsequent Distributions if and to the extent that other General Unsecured Claims are disallowed or expunged or as Post-confirmation Estate Assets are sold and converted to Cash.　Such subsequent Distributions will be included with the next Distributions due to be paid to Holders of Allowed Claims pursuant to and in accordance with Article V of the Plan.

7.　　Setoffs and Recoupments.　Except with respect to Causes of Action of any nature released or allowed pursuant to the Plan or Confirmation Order, the Plan Administrator or his/her designee as instructed by the Plan Administrator may, pursuant to section 553 of the Bankruptcy Code or applicable non-bankruptcy law, set off or recoup against any Allowed Claim, the Distributions to be made pursuant to the Plan on account of such Claim, any Causes of Action of any nature that the Debtor, the Post-confirmation Estate, the Plan Administrator or their successors may hold against the Holder of such Allowed Claim; provided that neither the failure to effect a setoff or recoupment nor the allowance of any Claim hereunder will constitute a waiver or release by the Debtor, the Post-confirmation Estate, or the Plan Administrator or their successors, of any Causes of Action that the Debtor, the Post-confirmation Estate, or the Plan Administrator or their successors may possess against such Holder.

K.　　Effect Of Consummation Of The Plan

The Plan provides for the Auction of the Debtor's Sale Assets and distributions of the Liquidating Estate in accordance with the terms and provisions of the Plan.　Pursuant to the Plan, the Plan Administrator is charged with administering the Liquidating Estate in the most cost-effective manner possible in the shortest reasonable time, with due regard for the risk that undue haste may reduce the liquidation proceeds of any portion of the Liquidating Estate.　In selling or otherwise monetizing the Liquidating Estate, the Plan Administrator shall use commercially reasonable efforts to maximize the amount of the net proceeds derived therefrom.

Accordingly, if the Plan is confirmed and becomes effective, it will result in the orderly and efficient liquidation of the Sale Assets and distributions to the Holders of Allowed Claims in accordance with the applicable provisions of the Plan as described above.　Allowed Administrative Expense Claims and Allowed Priority Tax Claims will be paid in full as provided for under Articles II and III of the Plan.

If the Plan is confirmed and becomes effective, all Holders of Claims or Interests will be bound by the terms of the Plan, whether or not they have voted to accept the Plan. To be counted, Ballots to vote to accept or reject the Plan described herein must be submitted in accordance with the voting instructions accompanying the Ballots (the "Voting Instructions"). *See* Section III herein, entitled "VOTING AND CONFIRMATION OF THE PLAN."

L.     Injunction, Release And Exculpation

1.     Injunction.  Except as otherwise provided in or to enforce the Plan or Confirmation Order, on or after the Effective Date all Entities that have held, currently hold, or may hold, a Claim, Lien, Interest or other liability against or in the Debtor that would be discharged or satisfied upon confirmation of the Plan and the Effective Date but for the provisions of Bankruptcy Code § 1141(d)(3) are permanently enjoined from taking any of the following actions on account of such Claim, Lien, Interest or right: (a) commencing or continuing in any manner any action or other proceeding on account of such Claim, Lien, Interest, or right against the Post-confirmation Estate, Post-confirmation Estate Assets, the Real Property or any other Property that is to be distributed under the Plan or the Levites Cash Collateral Stipulation, including the Levites Cash Collateral, or the Plan Administrator or the Levites Secured Creditors or VNB; or (b) enforcing, attaching, collecting or recovering in any manner any judgment, award, decree, or order against the Post-confirmation Estate, Post-confirmation Estate Assets, the Real Property or any other Property to be distributed under the Plan or the Levites Cash Collateral Stipulation, including the Levites Cash Collateral, or the Plan Administrator or the Levites Secured Creditors or VNB.

On and after the Effective Date, each Holder of an Interest in the Debtor is permanently enjoined from taking or participating in any action that would interfere with or otherwise hinder the Plan Administrator from implementing the Plan or the Confirmation Order.

Except as otherwise provided in the Plan or the Confirmation Order, on or after the Effective Date all Creditors of, Claimants against, Interest Holders of, and Entities having or claiming an interest of any nature in the Post-confirmation Estate are hereby permanently enjoined and stayed from pursuing or attempting to pursue any action, commencing or continuing any action, employing any process, or any act against the Post-confirmation Estate, Post-confirmation Estate Assets, the Real Property or any other Property that is to be distributed under the Plan or the Stay Relief Stipulation, including the Levites Cash Collateral, or the Plan Administrator or the Levites Secured Creditors or VNB on account of or based upon any right, claim or interest which any such Creditor, Claimant, Interest Holder, or other Entity may have had prior to the entry of the Confirmation Order.

2.     **Release.  In consideration of the treatment provided under the Plan and for (a) the Levites Plan Contribution and the waiver of any right of recovery on account of any Allowed General Unsecured Claims the Levites Secured Creditors may have in the Chapter 11 Case, including any unsecured "deficiency" claims the Levites Secured Creditors may hold against the Debtor, and (b) the VNB Plan Contribution and the waiver of any right of recovery on account of any Allowed Administrative Expense Claims and any Allowed General Unsecured Claims VNB may have in the Chapter 11 Case, including any unsecured "deficiency" claims VNB may hold against the Debtor, except as otherwise provided for**

herein, the Debtor (the "Releasor") hereby releases, remises and forever discharges the Levites Secured Creditors and VNB, and each of their respective members, officers, directors and employees (each hereinafter a "Released Party" and, collectively, the "Released Parties") from any debt, charge, Causes of Action, liability, encumbrance, Lien, security interest, Claim, Interest, or other cause of action of any kind, nature or description (including, but not limited to, any claim of successor liability), other than a right to pursue a claim based on any gross negligence or willful misconduct, including any breach of fiduciary duty constituting gross negligence or willful misconduct, that arose before the Confirmation Date, and any debt of the kind specified in sections 502(g), 502(h) or 502(i) of the Bankruptcy Code, whether or not a proof of Claim or Interest is or could have been filed or is deemed filed, and whether or not such Claim or Interest is or could have been Allowed.

3.     **Exculpation.**  Neither the Committee nor any of its respective officers, directors, members, employees or other agents, financial advisors, attorneys, and accountants shall have any liability to any Holder of any Claim or Interest for any act or omission in connection with or arising out of the negotiation, preparation and pursuit of confirmation of the Plan, the Consummation of the Plan, the administration of the Plan, the Chapter 11 Case or the property to be distributed under the Plan except for liability based upon willful misconduct or gross negligence as finally determined by a Final Order of the Bankruptcy Court.

M.     <u>Conditions Precedent To The Confirmation Order, The Effective Date And Consummation Of The Plan</u>

1.     <u>Condition Precedent to Entry of the Confirmation Order</u>. The following condition must be satisfied on or before the Confirmation Date:  The Confirmation Order must be in form and substance reasonably acceptable to the Committee, the Levites Secured Creditors and VNB.

2.     <u>Conditions Precedent to the Effective Date</u>.  The following conditions must be fully satisfied or waived, if subject to waiver, on or before the Effective Date for the Plan to become effective:

(a)     the Confirmation Order must be entered by the Bankruptcy Court and become a Final Order; and

(b)     the Levites Secured Creditors shall have delivered the Levites Plan Contribution to the Levites Escrow Agent and VNB shall have delivered the VNB Plan Contribution to the VNB Escrow Agent pending delivery of such funds to the Plan Administrator in accordance with the terms of the Plan.

3.     <u>Condition Precedent to Consummation</u>.  Upon the Auction having occurred, the Plan shall be deemed substantially consummated.

If the Plan has not been consummated in accordance with the terms hereof within one hundred eighty (180) days of the Confirmation Date, or such longer period as may be

agreed upon in writing by the Plan Administrator, the Plan Administrator shall file with the Bankruptcy Court and serve a notice indicating an inability to consummate the Plan and the Bankruptcy Court shall thereafter schedule a hearing to consider the just disposition of the Chapter 11 case.

4. <u>The Committee's Right to Waive Conditions Precedent</u>. The Committee, in its sole discretion, may waive the Final Order condition of the foregoing Section 13.2 at any time from and after the Confirmation Date. In that event, the Committee and the Debtor will be entitled to render any or all performances under the Plan prior to what otherwise would be the Effective Date if the above-referenced condition was not waived, including, but not limited to, the right to perform under any circumstances which would moot any appeal, review or other challenge of any kind to the Confirmation Order if the Confirmation Order is not stayed pending such appeal, review or other challenge.

5. <u>Effect of Failure of Conditions</u>. If all the Conditions Precedent to the Effective Date have not been satisfied or duly waived on or before the first Business Day that is more than one hundred eighty (180) days after the Confirmation Date, or by such later date as is proposed and approved, after notice and a hearing, by the Bankruptcy Court, then upon motion by the Committee made before the time that all of the conditions have been satisfied or duly waived, the Confirmation Order shall be vacated by the Bankruptcy Court; <u>provided</u>, <u>however</u>, that notwithstanding the filing of such a motion, the order confirming the Plan shall not be vacated if all of the conditions to Consummation set forth in Section 13.2 are either satisfied or duly waived before the Bankruptcy Court enters an order granting the relief requested in such motion. If the Confirmation Order is vacated pursuant to this Section 13.5, the Plan shall be void in all respects, and nothing contained in the Plan shall (a) constitute a waiver or release of any Claims or Interests or (b) prejudice in any manner the rights of the Holder of any Claim or Interest in the Debtors. If the Plan does not become effective within the time frame provided herein, (a) the Levites Escrow Agent will return the Levites Plan Contribution to the Levites Secured Creditors, and (b) the VNB Escrow Agent will return the VNB Plan Contribution to VNB.

N. <u>Miscellaneous Provisions</u>

1. <u>Bankruptcy Court to Retain Jurisdiction</u>. Notwithstanding entry of the Confirmation Order, or the occurrence of the Effective Date or Consummation of the Plan, the Chapter 11 Case having been closed, or a Final Decree having been entered, the Bankruptcy Court (or the District Court, as the case may be) shall have and retain jurisdiction of matters arising out of, and related to the Chapter 11 Case and the Plan under, and for the purposes of, Bankruptcy Code §§ 105(a), 1127, 1142 and 1144 and for, among other things, the following purposes:

(a) To consider any modification of the Plan under Bankruptcy Code § 1127 and/or modification of the Plan before "substantial consummation" as defined in Bankruptcy Code § 1101(2), and to consider any modification of the Plan to cure any defect or omission, or reconcile any inconsistency in the Plan, the Disclosure Statement or in any order of the Bankruptcy Court, including, without limitation, the Confirmation Order.

(b) To hear and determine pending applications for the assumption or rejection of

executory contracts or unexpired leases, if any, and allowance of Claims resulting therefrom.

(c)     To (i) hear and determine any Claim or Cause of Action arising in or related to the Chapter 11 Case; and (ii) to adjudicate any Causes of Action or other proceedings currently pending or which may be commenced by the Plan Administrator after the Effective Date or otherwise referenced herein or elsewhere in the Plan, including, but not limited to, the adjudication of any Causes of Action and any and all "core proceedings" under 28 U.S.C. § 157(b), which are or may be pertinent to the Chapter 11 Case and which the Plan Administrator may deem appropriate to commence and prosecute in support of implementation of the Plan.

(d)     To determine any and all adversary proceedings, applications, and contested matters filed or commenced by the Debtor or, after the Effective Date, the Plan Administrator, including, without limitation, any Causes of Action.

(e)     To ensure that Distributions are accomplished as provided in the Plan.

(f)     To hear and determine any objections to Administrative Expense Claims, to Proofs of Claim, or to Claims and Interests filed and/or asserted both before and after the Confirmation Date, including any objections to the classification of any Claim or Interest, and to allow or disallow any disputed Administrative Expense Claim, Claim or Interest, in whole or in part, and any request for estimation of Claims.

(g)     To protect the Post-confirmation Estate from adverse Claims or interference inconsistent with the Plan, including to hear actions to quiet or otherwise clear title to such property of the Post-confirmation Estate based upon the terms and provisions of the Plan, including, without limitation, with respect to the sale(s) of any of the Real Property.

(h)     To (i) enter and implement such orders as may be appropriate in the event the Confirmation Order is for any reason stayed, revoked, modified, or vacated; (ii) to issue such orders in aid of execution of the Plan as may be necessary and appropriate, to the extent authorized by Bankruptcy Code § 1142; and (iii) to interpret and enforce any Orders previously entered in the Chapter 11 Case to the extent such Orders are not superseded or inconsistent with the Plan.

(i)     To hear and determine all applications for compensation and reimbursement of expenses of Professionals under Bankruptcy Code §§ 330, 331, and 503(b) for services rendered and expenses incurred prior or subsequent to the Confirmation Date.

(j)     To hear and determine all litigation, Causes of Action and all controversies, suits and disputes that may arise in connection with the interpretation, implementation or enforcement of the Plan, including but not limited to, any and all litigation and/or Causes of Action brought by the Plan Administrator or other party in interest, whether such litigation and/or Causes of Action is/are commenced either prior to or after the Effective Date.

(k)     To hear and determine matters concerning state, local, and federal taxes in accordance with Bankruptcy Code §§ 345, 505, and 1146.

(l)     To enter a Final Decree closing the Chapter 11 Case.

(m)     To consider and act on the compromise and settlement of any litigation, Claim against or Cause of Action asserted in connection with the Chapter 11 Case or the Post-confirmation Estate.

(n)     To hear and determine all matters and disputes relating to the Auction and any Closing.

(o)     Without limiting the generality of the foregoing and notwithstanding the Effective Date and to the fullest extent permitted by law, the Bankruptcy Court shall retain exclusive jurisdiction over the Post-confirmation Estate after the Effective Date, including, without limitation, jurisdiction to resolve any and all controversies, suits and issues that may arise in connection herewith or therewith, including, without limitation, any Entities' obligations incurred in connection herewith or therewith, including without limitation, any action against the Post-confirmation Estate or any or all of the Plan Administrator's professionals or the Post-confirmation Estate, and any action seeking turn over or recovery of assets included in the Post-confirmation Estate.

2.     <u>Binding Effect of the Plan</u>.  Nothing contained in the Plan or the Disclosure Statement will limit the effect of confirmation as set forth in Bankruptcy Code §1141.  The provisions of the Plan shall be binding upon and inure to the benefit of the Debtor, the Plan Administrator, any Holder of a Claim or Interest, or their respective predecessors, successors, assigns, agents, officers, managers, members and directors and any other Entity affected by the Plan.

3.     <u>Fractional Cents</u>.  Whenever any payment of a fraction of a cent would otherwise be called for, the actual payment shall reflect a rounding down of such fraction to the nearest whole cent.

4.     <u>Successors and Assigns</u>.  The rights and obligations of any Entity named or referred to in the Plan shall be binding upon, and shall inure to the benefit of, the successors and assigns of such Entity.

5.     <u>Blank Ballots</u>.  Any Ballot which is executed by the Holder of an Allowed Claim but which does not indicate an acceptance or rejection of the Plan shall be deemed to be an acceptance of the Plan.  Any Ballot not filed in accordance with the filing instructions on the ballot pertaining to the Plan shall not be counted for voting purposes.

6.     <u>Authorization of Corporate Action</u>.  Upon the entry of the Confirmation Order, all actions contemplated by the Plan will be deemed authorized and approved in all respects (subject to the provisions of the Plan), including, without limitation, the transfer and/or contribution of the Post-confirmation Estate Assets.  On the Confirmation Date, appropriate members or authorized signatories of the Debtor and the Plan Administrator are authorized and directed to execute and to deliver any and all agreements, documents and instruments contemplated by the Plan, the Post-confirmation Estate and/or necessary for the consummation of the Plan, and all such actions taken or caused to be taken shall be deemed to have been authorized and approved by the

Bankruptcy Court without the need for any additional authorizations, approvals or consents.

       7.     <u>Withdrawal of the Plan</u>.  The Committee reserves the right, at any time prior to the entry of the Confirmation Order, to revoke or withdraw the Plan.  If the Committee revokes or withdraws the Plan, or if the Confirmation Date does not occur, or if the Effective Date does not occur then (a) the Plan will be deemed null and void and (b) the Plan shall be of no effect and shall be deemed vacated, and the Chapter 11 Case shall continue as if the Plan had never been filed and, in such event, the rights of any Holder of a Claim or Interest shall not be affected nor shall such Holder be bound by, for purposes of illustration only, and without limitation, (i) the Plan, (ii) any statement, admission, commitment, valuation or representation contained in the Plan, the Disclosure Statement, or the Related Documents or (iii) the classification and proposed treatment (including any allowance) of any Claim in the Plan.

       8.     <u>Captions</u>.  Article and Section captions used in the Plan are for convenience only and will not affect the construction of the Plan.

       9.     <u>Method of Notice</u>.  Any notice or other communication under the Plan shall be in writing (including by facsimile transmission or by e-mail) and shall be deemed to have been sufficiently given, for all purposes, if deposited, postage prepaid, in a post office or letter box addressed to the person for whom such notice is intended (or, in the case of notice by facsimile transmission or e-mail, when received and telephonically or electronically confirmed), addressed as follows (provided, however, that only one notice or other communication hereunder need be sent to Holders sharing the same address):

      If to the Committee, to:

      Creditors' Committee
      c/o Frank A. Doddato, Committee Chair
      666 Old Country Road
      Garden City, New York 11530

      With a copy to:

      Westerman Ball Ederer Miller & Sharfstein, LLP
      1201 RXR Plaza
      Uniondale, New York 11556
      Attn.: Thomas A. Draghi, Esq.

      If to the Plan Administrator:

      Salvatore LaMonica, Esq.
      LaMonica, Herbst & Maniscalco, LLP
      3305 Jerusalem Avenue
      Wantagh, New York 11793

With a copy to:

Westerman Ball Ederer Miller & Sharfstein, LLP
1201 RXR Plaza
Uniondale, New York 11556
Attn.: Thomas A. Draghi, Esq.

If to the Levites Secured Creditors:

The Levites Secured Creditors
374 McLean Avenue
Yonkers, New York 10705

With a copy to:

Moses & Singer, LLP
The Chrysler Building
405 Lexington Avenue
New York, New York 10174
Attn.: James M. Sullivan, Esq.

If to VNB:

VNB New York Realty Corp.
c/o Valley National Bank
275 Madison Avenue, 2nd Floor
New York, New York 10016
Attn.: John Stine, Vice President Special Assets

With a copy to:
Kriss & Feuerstein LLP
360 Lexington Avenue, Suite 1200
New York, New York 10017
Attn.: Jerold C. Feuerstein, Esq.

Any of the above may, from time to time, change its address for future notices and other communications hereunder by filing a notice of the change of address with the Bankruptcy Court.

10.    _Amendments and Modifications to Plan_.  With the written consent of the Levites Secured Creditors, the Plan may be altered, amended or modified by the Creditors' Committee, before or after the Confirmation Date, as provided in section 1127 of the Bankruptcy Code.  The Creditors' Committee may also seek to modify the Plan at any time after confirmation so long as (a) the Plan has not been substantially consummated, (b) the Levites Secured Creditors consent, and (c) the Bankruptcy Court authorizes the proposed modification after notice and a hearing.  The Creditors' Committee further reserves the right to modify the treatment of any Allowed Claims at any time after the Effective Date upon the consent of the creditor whose Allowed Claim treatment is being modified, so long as no other creditors are materially adversely affected.

11.    _Section 1125(e) of the Bankruptcy Code_.  Confirmation of the Plan will constitute a finding that the Committee (and each of its Affiliates, agents, directors, officers, employees, members, advisors, professionals, and attorneys) have proposed and solicited acceptances of the Plan in good faith and in compliance with the applicable provisions of the Bankruptcy Code.

12.    _Entire Agreement_.   The Plan, as described herein, and the Disclosure Statement and exhibits thereto set forth the entire agreement and understanding of the parties hereto relating to the subject matter hereof and supersede all prior discussions and documents.  No party hereto shall be bound by any terms, conditions, definitions, warrants, understandings or representations with respect to the subject matter hereof, other than as is expressly provided for herein or as may hereafter be agreed to by the parties in writing.

13. <u>Post-Confirmation Obligations</u>. Under current applicable law, the Debtor and, after the Effective Date, the Post-confirmation Debtor, for and on behalf of the Post-confirmation Estate, is required to pay fees assessed against Debtor's Estate under U.S.C. § 1930(a)(6) until entry of an order closing the Chapter 11 Case. Subject to a change in applicable law, the Plan Administrator shall pay all fees assessed against the Estate under 28 U.S.C. §1930(a)(6) from the Post-confirmation Estate and shall file post-confirmation reports until entry of an order closing the Chapter 11 Case of Debtor.

Dated: Uniondale, New York
      May 26, 2011

Official Committee of Unsecured Creditors
of Zurich Associates, Ltd.


By:    */s/ Frank Doddato*
Name: Frank A. Doddato, Esq., as agent
 for Paul and Gail Horner
Title: Chairman


Prepared By:

WESTERMAN BALL EDERER
 MILLER & SHARFTEIN, LLP


By:    */s/ Thomas A. Draghi*
     Thomas A. Draghi, Esq.
     1201 RXR Plaza
     Uniondale, New York 11556
     (516) 622-9200

*Attorneys for the Official Committee*
 *of Unsecured Creditors*

00439589.DOC